220 Cal.App.3d 814 (1990)
269 Cal. Rptr. 624
In re DANIEL C.H., a Person Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
DANIEL O.H., Defendant and Appellant
Docket No. H004308.
Court of Appeals of California, Sixth District.
May 21, 1990.
*821 COUNSEL
Ann Jory, under appointment by the Court of Appeal, for Defendant and Appellant.
Leo F. Himmelsbach, District Attorney, Robert J. Masterson, Deputy District Attorney, Steven M. Woodside, County Counsel, and Donald J. Fallon, Deputy County Counsel, for Plaintiff and Respondent.
OPINION
CAPACCIOLI, Acting P.J.
Daniel O.H. (Father) appeals from a decision in a juvenile dependency action involving his son, Daniel C.H. (Daniel). Father contends that the trial court denied him due process of law at a hearing combining a six-month review and a supplemental petition under Welfare and Institutions Code section 387 because: (1) the court improperly restricted the appointment and testimony of psychiatric experts; and (2) following the hearing, it improperly amended the supplemental petition by adding new issues not properly before the court.[1] Father also contends that the trial court abused its discretion by denying him all visitation with his son. We affirm.

FACTS
Father and Marsha H. (Mother) have two children, Heather, born May 1, 1972, and Daniel, born May 10, 1981. In the fall of 1985, Father and Mother were involved in apparently bitter divorce proceedings. (See In re Heather H. (1988) 200 Cal. App.3d 91, 93 [246 Cal. Rptr. 38].) Shortly thereafter, young Daniel made statements to his mother concerning his father that resulted in a section 300 dependency action. (See id. at pp. 93-94.)
During the dependency action, the juvenile court appointed Dr. Virginia Heenan, a clinical psychologist, to evaluate Daniel. (200 Cal. App.3d at p. 94.) In 1986, based in part on Dr. Heenan's testimony that Father had sexually abused Daniel, the court declared Heather and Daniel dependent children under section 300, subdivisions (a) and (d). (See id. at p. 93.) The court ordered the family to participate in therapy and ordered Daniel to reside with his mother. (Id. at p. 93.) Neither Daniel nor his father appealed.[2]
*822 In June 1987, a review hearing was scheduled. The social worker submitted a report which recommended that the children be placed alternately with Father and Mother, and the court learned that Father had been permitted unsupervised visitation with Daniel. When Mother indicated that she would contest the new proposed placement, the court continued the hearing, and extended the previous court order permitting Father visitation at the discretion of the supervising worker and Daniel's individual therapist.
Mother requested the court to reappoint Dr. Heenan to testify at the continued hearing on placement. Father and Heather's attorney objected because Dr. Heenan allegedly had already "pre-judged" the case (because of Heenan's 1986 conclusion that Father had molested Daniel), and because they thought further expert evaluation was unnecessary inasmuch as the family had three treating therapists and a social worker. Nonetheless, the court reappointed Dr. Heenan as an evaluator to help the court decide questions relating to the visitation of Father and Daniel.
In July 1987, Father and both children had a week-long visit. Daniel visited his treating therapist, Dr. Parkman, following the visit, and reported nothing unusual. (This was apparently Daniel's last visit with Dr. Parkman.) The following day, Daniel met with the evaluator, Dr. Heenan. Daniel told Dr. Heenan that recently Father had molested him again. The department immediately terminated Daniel's visits with Father, and Father has not visited his son since then.
In August 1987, the department filed a supplemental petition under section 387 based on the alleged "re-molest" by Father. At the initial hearing on the 387 petition, the court ordered the supplemental petition to be tried together with the shared custody issues at the continued six-month review hearing. The court also considered whether Dr. Heenan should continue as the evaluator in the case; learned that Dr. Heenan had requested another independent evaluator to be appointed to evaluate the new allegation of molest; appointed a child advocate for Daniel; and ordered no contact between Father and Daniel. The court did not at this time decide whether to appoint a second independent evaluator.
About a week later, Mother contacted Dr. Dyane Sherwood to ask Sherwood to evaluate Daniel. Mother allegedly told Dr. Sherwood that she had been referred by Dr. Heenan. A few days later, apparently at Dr. Sherwood's request, Dr. Heenan also contacted Dr. Sherwood to refer Daniel for evaluation. Shortly thereafter, Dr. Heenan wrote Dr. Sherwood a letter outlining the evaluation required of Daniel.
Later that month (August 1987), the court conducted a "detention" hearing in the matter. Dr. Heenan testified that Father should not see *823 Daniel. Dr. Heenan also noted that she had seen Mother, apparently at Mother's request, on at least two occasions between June 1986 and her reappointment in June 1987. Father did not, at that time, object on the grounds that Heenan would be biased due to these two consultations.[3] The court then ordered Dr. Sherwood to evaluate Daniel, despite Father's objection that Sherwood would be biased because Heenan had selected and briefed Sherwood concerning the case. The court also found a prima facie showing for the supplemental petition, and continued the no contact order.
In approximately September 1987, Daniel began seeing a new treating therapist, Dr. Robert Niederman.
In October 1987, Father moved to have the whole family examined by an expert of Father's choice. Father did not base his request for additional expert examination on any alleged bias of Dr. Heenan or Dr. Sherwood, but rather noted that the treating professionals allegedly had different opinions than the two evaluators, and that two court decisions had found expert testimony based on the child molest syndrome to be unreliable. The department objected to Father's motion because it believed there was sufficient expert evidence and because further examination could be detrimental to Daniel. The court subsequently denied the motion on the grounds advanced by the department (sufficient expert opinion and detriment to Daniel).
In December 1987, Dr. Niederman wrote the court a note stating that he did not wish to report directly to the court concerning visitation because it would jeopardize his therapeutic relationship with Daniel. Niederman advised the court to appoint an evaluator on the issue of visitation.
The trial (on the issues of proper placement and the supplemental petition) began in February 1988 and lasted several days. The following people testified: Dr. Heenan and Dr. Sherwood, the court-appointed evaluators; Dr. Garton and Dr. Parkman, two of the family's treating therapists; Mother and Father; Barbara Watkins, Willie Hives, and Dan Rice, the department caseworkers; Lisa Ellsworth, the child advocate; Carol Marks, a counselor (neither an evaluator nor a treating therapist) who testified as an expert witness; Geoffrey Braun, Father's former attorney; and Leslie Rose, a friend from Father's church. The children did not testify.
Dr. Sherwood testified that she met with Daniel four times, when he was six years old. She did not examine the other members of Daniel's family. Sherwood understood at the time she examined Daniel that there were different opinions among the professionals about whether Daniel had been *824 molested, and that Dr. Heenan believed that he had been molested. Sherwood concluded that Daniel had been molested, and that there had been no coaching by Mother. She also noted that Daniel was under enormous psychological stress. The court did not permit questioning related to disposition at the trial.[4]
Dr. Heenan also concluded that Daniel had been molested. She testified that Daniel had reported the new molest to her, and that she in turn reported it to the authorities. She also noted that Daniel was under acute stress, with psychotic symptoms, and stated that Daniel had made it clear that he didn't want to see his father.
Dr. Parkman testified that she was Daniel's treating therapist from July 1986 to July 1987. She saw Daniel on 40 occasions, and saw him with his Father on approximately 12 of those visits. During those visits, Dr. Parkman saw no indication of molest, and she discerned no fear of Father by Daniel. She did not, however, do an evaluation to determine whether Daniel had been molested. Rather, she thought Daniel's statements that his daddy rubbed him were a "spiel." She did note that the stress and fighting between the parents were detrimental to Daniel.
The child advocate, Lisa Ellsworth, testified that Daniel had told her in detail about the molestation, and told her that he did not want to see Father.
Father testified, among other things, that he had not molested Daniel. Father did admit, however, that he had taken Daniel into Father's bed on several occasions during the overnight visits because Daniel was afraid. The court specifically stated that it did not find Father very convincing.
At the conclusion of testimony, the court found that the previous placement order had not been effective to protect Daniel, and sustained the allegations in the supplemental petition. The court specifically noted that "Daniel states and believes he has been molested while visiting in his father's home," and that a clinical psychologist had evaluated Daniel and concluded that he had been sexually molested. The court made further findings concerning the severity of the conflict between the parents, its effect on the children, and the lack of effectiveness of therapy; and amended the petition to conform to proof.
On March 11, 1988, the court held a dispositional hearing. The parties apparently submitted memoranda and some reports, but they offered no *825 witnesses concerning Daniel, and none testified. The court continued its jurisdiction over Daniel, permitted him to reside with Mother, and denied Father any visitation. Father's attorney did not, at that time, argue that visitation should be supervised, or make any other pertinent arguments against the disposition.
Father timely appeals.

ISSUES
1. Did the trial court properly exclude Daniel Jr.'s treating therapist, Dr. Niederman, from testifying because of the psychotherapist-patient privilege?
2. Did the trial court violate Father's rights to due process by permitting Drs. Heenan and Sherwood to testify, while refusing to permit Father to have a third evaluator of his choice examine Daniel and testify?
3. Did the trial court violate Father's rights to due process by amending the petition at the conclusion of the hearing, and was the error, if any, reversible?
4. Does substantial evidence support the trial court's judgment to deny Father all visitation with Daniel?

DISCUSSION

EXCLUSION OF SON'S TREATING THERAPIST AS WITNESS
Father raises several issues concerning the exclusion of Daniel's treating therapist as a witness. We requested supplemental briefing on this issue, and after having received it, construe Father's arguments as follows.
Father's theory at trial was that no molest had actually occurred, but instead that Mother had coached Daniel concerning the molest. Father hoped that Dr. Niederman's testimony would support this theory, and made an offer of proof that this might be the case. Father apparently believed that as Daniel's treating therapist, Niederman's testimony would outweigh or discredit that of Drs. Heenan and Sherwood, who had merely evaluated Daniel.
Daniel's attorney objected to Niederman's proposed testimony and asserted the psychotherapist-patient privilege on Daniel's behalf. In response, Father argued that Daniel had tendered his mental condition as an issue, *826 within the meaning of Evidence Code section 1016, by complaining of the molest. Father also argued that fundamental fairness required that Niederman be allowed to testify. After hearing argument, the trial court excluded Dr. Niederman's testimony based on the psychotherapist-patient privilege.
On appeal, Father raises issues concerning the applicability of the psychotherapist-patient privilege when the patient is a minor child in a section 300 proceeding. He apparently contends that a parent is entitled to obtain information concerning a minor child's confidential communications to the child's psychotherapist, and that the psychotherapist-patient privilege will not protect the information from disclosure at a section 300 proceeding. He premises this argument on two beliefs: first, that the parent has a right to information concerning the medical condition of his child, so that the privilege does not apply; and second, that even if a privilege normally does exist, and can be asserted by a child "against a parent," the privilege should yield when the parent needs the privileged information to present the parent's case. We turn first to a brief examination of the relevant statutes.
The psychotherapist-patient privilege is set forth in Evidence Code sections 1010-1027. Numerous authorities discuss the privilege in detail. (See e.g., 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, §§ 1201-1219, pp. 1143-1163.) (1) We need not reiterate those authorities, but merely note that the purpose of the privilege is to protect the privacy of a patient's confidential communications to his psychotherapist. (Evid. Code, § 1014; see In re Lifshutz (1970) 2 Cal.3d 415, 431-432 [85 Cal. Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) We also point out that the patient generally is the holder of the privilege, unless the patient is dead or has a guardian or conservator. (Evid. Code, § 1013.) (2) The statutes do not specifically mention who holds the privilege when the patient is a minor. Case law does suggest, however, that a minor child is entitled to the privacy granted by the privilege. (See, e.g., People v. Caplan (1987) 193 Cal. App.3d 543, 554 [238 Cal. Rptr. 478]; compare In re Fred J. (1979) 89 Cal. App.3d 168, 179 [152 Cal. Rptr. 327].)
The second set of statutes at issue regulates patient access to medical records. These statutes, which we believe are relevant to a parent's right to obtain medical information concerning his child, are found in former Health and Safety Code sections 25250-25258.[5] Former Health and Safety Code section 25253 specifically denied a parent or guardian access to a minor child's patient records "where the health care provider determines that access to the patient records requested ... would have a detrimental *827 effect on the provider's professional relationship with the minor patient." (Health & Saf. Code, § 1795.14, subd. (a)(2), former § 25253, subd. (a)(2).)[6]
The third statute that bears on this issue of parent access to a minor's records is Civil Code section 4600.5, subdivision (1). That statute provides: "Notwithstanding any other provision of law, access to records and information pertaining to a minor child, including, but not limited to, medical, dental, and school records, shall not be denied to a parent because that parent is not the child's custodial parent."
Father asserts that Civil Code section 4600.5, subdivision (1), guarantees a parent access to information and records concerning the medical treatment of his or her minor child, and that therefore a minor child's treating psychotherapist cannot withhold information about the child from the parent. Under this statute, he argues, there was no basis for an assertion of the psychotherapist-patient privilege.
We do not find Father's argument persuasive. (3) Civil Code section 4600.5, subdivision (1), does not establish a statutory right of access to medical records or information for parents of minor children. It simply states that a noncustodial parent will not be deprived of existing access to such records or information, based on the fact that he or she is not the custodial parent. In this case, Father was not denied access to Dr. Niederman's testimony because of the fact that he is not the custodial parent; rather any denial of access to that information was based on the psychotherapist-patient privilege, or in other words, on Daniel's right as a patient to privacy of the information communicated to his therapist.
Father has cited to us no other authority that establishes a parent's right to demand disclosure of confidential communications made by a minor child to that child's therapist. Rather, he contends that such a right flows from the fundamental nature of the parent-child relationship. We disagree.
(4) While we agree that parents may have some rights, because of the parent-child relationship, to obtain information concerning the medical treatment or condition of their minor children, we believe that disclosure is not required in all cases. Indeed, the Health and Safety Code sections previously mentioned specifically deny to a parent or guardian access to records in a situation such as that found in this case, namely where the therapist has stated that it will harm the professional relationship with the child. (Health & Saf. Code, § 1795.14, subd. (a)(2), former § 25253, subd. *828 (a)(2).) Although the Health and Safety Code statute specifies access only to records, we find it persuasive concerning a parent's access to testimony by a minor's therapist. We believe that, except in very special circumstances, if disclosure would harm the therapist-patient relationship or have a detrimental effect on the minor's psychological well being, a parent should be denied access not only to the records of the minor child's psychotherapist, but to the therapist's testimony.
We find support for this conclusion not only in common sense, but in the Legislature's statement of intent in enacting the division of the Health and Safety Code dealing with patient access to health records. (See Health & Saf. Code, § 1795, former § 25250.) There, the Legislature declared that "... every person having ultimate responsibility for decisions respecting his or her own health care also possesses a concomitant right of access to complete information respecting his or her condition and care provided. Similarly, persons having responsibility for decisions respecting the health care of others should, in general, have access to information on the patient's condition and care...." (Health & Saf. Code, § 1795, former § 25250, italics added.) The use of the words "complete information" might be construed to include testimony by a psychotherapist. Thus, a patient should normally be entitled to such information. Nevertheless, the use of the words "in general" suggests to us that the Legislature did not intend a parent to have a right to such information in all cases.
We do not specifically interpret the Health and Safety Code statutes above cited, but merely use them by way of analogy to decide the issue before us. We believe that even apart from the statutory language, policy considerations dictate that a parent should not always be entitled to full information from a minor child's treating psychotherapist. Father concedes as much, but argues that in this case, he should be entitled to disclosure because there is no substantial harm to the child. We again disagree.
We believe that in a case such as this, where the father is accused of child molest, and the child is in therapy, presumably to deal with the emotional aftermath of the alleged molest, the accused parent should not be entitled to access to the communications made by the child to the therapist. The child has at stake a substantial privacy interest, and we can foresee substantial emotional harm to the child from a forced disclosure in these circumstances. For example, the child may fear the parent and consequently refuse to be open with the therapist for fear of disclosure to the parent. (Compare In re Eduardo A. (1989) 209 Cal. App.3d 1038, 1042 [261 Cal. Rptr. 68], where the court noted how unreasonable it would be to expect a patient, in that case the mother, to participate freely in psychotherapeutic treatment if she knew what she said could all be revealed in court.) In this case, Daniel's *829 therapist had already expressed his view that his testimony would harm the therapeutic relationship with Daniel. Based on these facts, we find that Daniel was entitled to assert the psychotherapist-patient privilege to maintain the privacy of his communications with Dr. Niederman. We therefore reject Father's argument that, as Daniel's parent, he had a right to Dr. Niederman's testimony.
Unfortunately, this does not end our inquiry. (5) It merely establishes Daniel's right to assert the privilege, not whether the court correctly ruled that the privilege had not been waived, or that some other exception did not apply. For example, at trial, Father asserted that under Evidence Code section 1016 the privilege did not apply because Daniel had tendered his mental condition by complaining of the molest. To the extent that this continues to be an issue on appeal, we reject it. Daniel did not "tender" his mental state here by complaining of the acts of his father. (Compare In re Lifshutz, supra, 2 Cal.3d 415, 431-436; Simek v. Superior Court (1981) 117 Cal. App.3d 169, 174-176 [172 Cal. Rptr. 564]; Koshman v. Superior Court (1980) 111 Cal. App.3d 294, 298 [168 Cal. Rptr. 558].)
(6) Moreover, we do not believe that the trial court erred by permitting Daniel's attorney to assert the privilege on Daniel's behalf. We believe that the privilege belongs to the child, as the patient. (See Evid. Code, § 1013.) Regardless whether the court, the department, or someone else might have also been able to assert the privilege, we think it is perfectly reasonable for a minor's attorney to claim the privilege on behalf of a child in a section 300 proceeding. The attorney is, after all, appointed by the court to represent the child's interests. (See Welf. & Inst. Code, § 317, subd. (e), former § 318, subd. (d).) Whether the attorney holds such power in his or her own right (see former section 318, subd. (d)), or as one authorized by the minor child (see Evid. Code, § 1014, subd. (b)), or under derivative authority of the juvenile court (see § 318, subd. (d)), he or she would seem an appropriate person to assert the claim. (Cf. In re Fred J., supra, 89 Cal. App.3d 168, 184-185, Karlton, J., conc. and dis.; compare In re Troy D. (1989) 215 Cal. App.3d 889, 900 [263 Cal. Rptr. 869], court noted that in ordinary circumstances, it would be "reasonable" for a parent to assert physician-patient privilege on behalf of child.)
(7) We could also infer that Dr. Niederman himself asserted the privilege by writing the note to the court. At least one court has found that under Evidence Code section 1027, the psychotherapist, and not the child, must claim the privilege by stating that disclosure is not in the child's best *830 interest. (People v. Caplan, supra, 193 Cal. App.3d 543, 556-557.) (8) (See fn. 7.) Thus, the privilege was properly asserted on Daniel's behalf.[7]
Nor do we believe that the trial court attempted to create a "new" type of privilege as a safe harbor for children in therapy. Rather, the court properly applied the established psychotherapist-patient privilege set forth in Evidence Code section 1010 et seq.
(9) Furthermore, we will not consider Father's suggestion that any claim of privilege concerning Dr. Niederman's treatment of Daniel has now been waived. The events which he claims effected a waiver all occurred after the trial court rendered its judgment. We normally do not review matters occurring after the entry of judgment. Instead, we review the correctness of the order at the time it was rendered. (9 Witkin, Cal. Proc. (3d ed. 1985) Appeal, § 252, pp. 258-259.) We see no reason to depart from this procedure now.
(10) Father also argues that the trial court should have followed the procedures outlined in Evidence Code sections 400 et seq. and 914 to determine the claim of privilege, because there allegedly were numerous questions that Dr. Niederman could have answered that were not privileged, such as how often Niederman meets with Daniel and for how long; whether he had communicated with Mother, Dr. Heenan, or Dr. Sherwood; his qualifications to treat Daniel; and his general conclusions about Daniel's mental health. Father complains that Niederman should have been called to the stand and been permitted to answer those questions, and that once on the stand, the issue of privilege could have been addressed. This argument lacks merit.
The trial court heard argument before and during the trial concerning whether Dr. Niederman should have been permitted to testify. We find this sufficient. Although the court could have permitted Dr. Niederman to testify to the some of the questions posed above, we do not think the court was required to do so. In fact, such testimony would have been a waste of the court's time. Without further questions and answers that would clearly have been protected by the psychotherapist-patient privilege, the answers to *831 the above questions would not have helped the court determine whether Daniel was molested, whether his mental state focuses on molest, or what disposition would be proper. Thus, the testimony would have served no real purpose. Accordingly, we do not think the trial court was required to call Dr. Niederman to the stand to determine these issues.
(11) We turn now to Father's last contention concerning the psychotherapist-patient privilege, namely that the privilege is not absolute, but must yield to Father's interest in presenting evidence in his own behalf. Father argues that the ruling to exclude Dr. Niederman's testimony effectively prevented him from investigating the facts and presenting his case, and that any privilege should therefore yield to his right to put on evidence. In support of this proposition, Father cites two cases: County of Alameda v. Superior Court (1987) 194 Cal. App.3d 254 [239 Cal. Rptr. 400]; and Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]. Both cases are readily distinguishable from the instant case.[8]
In County of Alameda, supra, 194 Cal. App.3d 254, a woman patient was raped in a county-operated locked psychiatric hospital. The woman brought a personal injury action against the hospital and sought to discover only the name, address, and telephone number of the man who she alleged had raped her. The man was also a patient in the facility. The hospital refused to reveal the man's name on the grounds of psychotherapist-patient privilege (and the California right of privacy).
The appellate court noted that the information was not protected by the Evidence Code itself, but by a "judicially declared expansion" of the privilege. After analyzing the competing interests at stake, including the patient's privacy and the woman plaintiff's right to personal security while confined under state authority, the court determined that, under the facts of the case, the man's identity was not privileged and should be made available. (194 Cal. App.3d at pp. 256-257, fn. 4, 260-261.) In essence, the court refused to extend the judicially created privilege to protect the man's identity.
The Tarasoff case also involved the disclosure of information that was not privileged. In Tarasoff, a young woman was killed by the patient of a university psychotherapist. The killer had confided his intent to kill to his therapist. The woman's parents brought a wrongful death action against the killer's therapist, among others. The issue before the court was whether the *832 therapist had a duty to warn or otherwise protect the victim. The issue was not whether the psychotherapist-patient privilege applied or whether it should yield to other more compelling interests. The court concluded that a therapist does have a duty to use reasonable care to protect when the therapist determines that his patient poses a serious danger of violence to another. (Tarasoff, supra, 17 Cal.3d at pp. 431, 439.) In reaching this conclusion, the court noted that the Legislature had already determined that the psychotherapist-patient privilege does not apply in certain cases where another's safety is at issue. (See id. at pp. 440-441; Evid. Code, § 1024.)
Thus, the courts in neither County of Alameda nor Tarasoff were called upon to decide the question before us here, namely whether a statutorily created privilege should yield to a party's alleged right to present evidence. In the County of Alameda case, the court decided only that a judicially created privilege did not extend to protect a patient's identity under specific factual circumstances. That is substantially different than the case here where the privilege is statutory and the information to be disclosed includes the actual confidential communications of the patient, not merely the patient's identity. The position advanced by Father also differs from the Tarasoff case, where the statutes themselves contained a provision stating that the psychotherapist-patient privilege did not apply. (See Evid. Code, § 1024.) Here, the privilege is statutory, and there is no applicable statutory exception to the privilege. Absent further authority to the contrary, we refuse to find a new exception to the privilege or to find that Father's interests are paramount to the privilege.[9] We therefore reject Father's argument that the privilege must yield.

LIMITATION OF PSYCHIATRIC EVALUATORS
Father contends that the trial court violated his due process rights by limiting the experts who evaluated Daniel and who testified to those allegedly selected by Mother. Father specifically alleges four errors in the appointment of the evaluators: 1. The court appointed Heenan after she had already formed and stated her opinion (in the 1986 jurisdictional hearing) *833 that Daniel had been molested; 2. The court retained Heenan as the evaluator after learning that Mother had consulted Heenan privately; 3. The court appointed Dr. Sherwood, who had been chosen by Mother; and 4. The court did not permit Father to choose his own expert to evaluate Daniel. Father complains that the court's actions violated his rights to cross-examination and due process because he was not given an opportunity to be heard and to put on his case.
(12a) The parent in a dependency proceeding has a due process right to confront and cross-examine witnesses. (In re Donald R. (1987) 195 Cal. App.3d 703, 712-714 [240 Cal. Rptr. 821].) Whether a right to due process is violated, however, will vary according to the facts of each case. (See Matthews v. Eldridge (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 96 S.Ct. 893]; cf. In re Jamie G. (1987) 196 Cal. App.3d 675 [241 Cal. Rptr. 869], cert. den. (1988) 488 U.S. 835 [102 L.Ed.2d 72, 109 S.Ct. 97].) (13a) Moreover, in considering Father's claim to due process, we must recall that a trial court has discretion in the appointment and selection of expert witnesses. (Evid. Code, § 730; Collins v. Superior Court (1977) 74 Cal. App.3d 47, 52 [141 Cal. Rptr. 273]; People v. Vatelli (1971) 15 Cal. App.3d 54, 61 [92 Cal. Rptr. 763].)
(14) As noted in the facts section, Dr. Heenan was appointed by the court as an expert evaluator at the trial in June 1986. Apparently, she testified at that time that Father had molested Daniel. Subsequent to that testimony, in the fall of 1986, Mother contacted Heenan privately. Between December 1986 and June 1987, Mother again consulted with Heenan privately. On appeal, Father urges that these facts show that Dr. Heenan was not an independent evaluator for the court, but was instead "Mother's expert." Similarly, he urges us to accept that Dr. Sherwood was also biased in Mother's favor because of her contact with both Mother and Heenan. He asserts that by appointing such biased evaluators, the court failed in its judicial duty to remain independent and unbiased. He also complains that because the trial court denied his bid to have an expert of his own choice evaluate the family, especially Daniel, he was unable properly to evaluate the evidence, namely Daniel's state of mind, or properly to cross-examine the experts concerning Daniel.
We do not find Father's arguments persuasive. A close examination of the record persuades us that the appointment of Heenan and Sherwood did not violate Father's due process rights. As Father points out, the court was unaware of Heenan's contact with Mother when it first reappointed her. It presumably appointed her in part because of her familiarity with the case and the child's familiarity with her, not because she was "Mother's expert." Later when Heenan's contact with Mother was disclosed, Father failed to *834 make an issue of it or to argue that it showed bias. Instead, his main thrust before trial concerning Heenan was that she had "prejudged" the case because of her previous conclusion in 1986 that Daniel had been molested. Given the fact that such a finding also represented the juvenile court's decision, we can hardly consider such an opinion "biased."
Father also argued that because Daniel had allegedly disclosed the "re-molest" to Heenan, she should be removed. The trial court heard testimony and argument concerning this issue, and decided to appoint a second evaluator, presumably in part to take care of any problem resulting from Daniel's disclosure to Heenan of the "remolest." This demonstrates to us not bias on the part of the court, but a serious attempt to ensure impartiality.
(15) We also fail to find bias on the part of the court in the appointment of Dr. Sherwood. The court was aware of the letter sent to Dr. Sherwood by Dr. Heenan, and sought to ensure that Dr. Sherwood would have available any additional information she should request and that she would receive it in a neutral manner.[10] The court also questioned the department caseworker to determine whether the department thought Dr. Sherwood was biased, and was apparently satisfied that she was not. It is somewhat unclear whether the court knew at the time of the appointment that Mother had contacted Sherwood, but in any event, from Sherwood's testimony at trial, Mother's contact with her appears to have been minimal. In light of these facts, we cannot say that the court abused its discretion or departed from its duty to remain impartial when it chose to appoint Dr. Sherwood as a second court evaluator.
To the extent that the contact with Mother served to "bias" the two court evaluators against Father, it did not amount to a due process violation. The court sought to ensure that the evaluators were independent, and when questions arose concerning Dr. Heenan, it appointed a second evaluator. (Compare Lois R. v. Superior Court (1971) 19 Cal. App.3d 895, 898-899 [97 Cal. Rptr. 158]; Spector v. Superior Court (1961) 55 Cal.2d 839 [13 Cal. Rptr. 189, 361 P.2d 909].) (12b) Although Father argues that he was precluded from effectively cross-examining the witnesses, we find no such evidence in the record. Father very methodically questioned the two experts about their contacts with Mother, with the other family members, with the other experts, and with each other. This questioning certainly put the court on notice of any possible bias on the part of the witnesses, and brought into focus the question of the witnesses' credibility. (Cf. In re Kerry O. (1989) *835 210 Cal. App.3d 326, 331 [258 Cal. Rptr. 448] [purpose of confrontation requirement is to ensure reliability, to guarantee that fact finder has adequate opportunity to assess credibility of witness].) Thus, Father was not deprived of the right to cross-examine the witnesses. There was no violation of due process. (Cf. In re Donald R. (1987) 195 Cal. App.3d 703, 713 [240 Cal. Rptr. 821].)
(13b) Nor do we find a due process violation in the trial court's failure to allow Father an independent expert of his own. First, as we have noted, we do not perceive that the two evaluators, Heenan and Sherwood, were actually Mother's witnesses. Thus, Father was not confronted with a situation in which only the opponent's experts were permitted to testify. Second, when Father argued to the court concerning the appointment of his own evaluator, he did not do so on grounds of bias. Thus, the court was not on notice that this was an issue. In light of this lack of notice, we are persuaded by the court's reasoning in denying Father's request. The court stated that further evaluation of Daniel by yet another expert would be detrimental to Daniel and that it was unnecessary because of the availability of sufficient expert opinions. The trial court has discretion in the appointment and selection of expert witness. (Evid. Code, § 730; Collins v. Superior Court, supra, 74 Cal. App.3d 47, 52; People v. Vatelli, supra, 15 Cal. App.3d 54, 61.) In light of the foregoing principles and facts, we discern no abuse of discretion.

AMENDMENT OF PETITION TO CONFORM TO PROOF
(16) Father contends that the trial court also violated his right to due process by amending the pleadings at the conclusion of the trial to include findings that were not pleaded in the August 1987 supplemental petition. He complains specifically about the following findings by the trial court:
"The court finds that the conflict between Mr. and Mrs. H[] is presently so severe and is continuing and is on-going and will continue, apparently, to such an extent that even minimal cooperation with the juvenile court efforts in the near future does not seem realistic, and Mr. and Mrs. H[] continue to see their personal situations in defining their situation in terms of conflict, competition and excessive maneuvering for litigation purposes while at the same time buttressing themselves with full-fledged defense mechanisms.
"The court further finds and amends the petition accordingly that the family members, including the children, have become further polarized from each other since the last court order. The continuing multiple programs of therapy, evaluations, reports, attempts to supervise visitations, and *836 so forth, have, in fact, furnished the participants with endless opportunity to continue to litigate.
"Next number. The court further finds and amends the petition that the various attempts at therapeutic intervention have been singularly ineffective and in most cases seriously counterproductive and further continued family therapy between Mr. and Mrs. H[] would be destructive for the time being.
"Next number. The court further finds and amends the petition accordingly that despite specific court findings of child molesting of Daniel by the father and protective court orders the father admits that he placed the child in bed with him in excess of ten times during overnight visitations in 1987.
"The court further finds and the petition is amended accordingly that Daniel's present state of mind focuses on on-going molest by his father and that this state of mind continues to the time of trial, and, further, this psychological status is one of great stress and disturbance according to evaluations which the court finds to be credible."
Father contends that the amendments contravene due process and general rules of pleading because he should have been entitled to reopen the case for further evidence and for an adequate opportunity to meet the new issues. He also asserts that the findings should not have been made because the underlying issues were not joined by the pleadings, nor were they tried. He cites In re Neal D. (1972) 23 Cal. App.3d 1045, 1048-1050 [100 Cal. Rptr. 706], and In re J.T. (1974) 40 Cal. App.3d 633 [115 Cal. Rptr. 553] for the proposition that he was afforded inadequate notice of the charges contained in the amendments to the petition. He also argues that the amendments improperly raised issues which should have been reserved for the dispositional hearing in a section 387 case. He complains that this procedure violated the rule requiring bifurcation of jurisdictional and dispositional hearings in section 387 matters, and that it prejudiced him.
Father fails to note that he did not object to the amendments, either at the initial hearing on the section 387 petition, or at the subsequent dispositional hearing. We believe that where the parent chooses not to contest the amendments, the parent waives the right to complain of the issue on appeal. (Cf. In re Jeremy C. (1980) 109 Cal. App.3d 384, 397 [167 Cal. Rptr. 283]: On its own initiative, the court found the conclusionary allegations of the petition violated due process. Although the parties did not raise the issue on appeal, the appellate court noted that the parent had "preserved issue below" by objecting to the lack of specific facts in the petition.) (Cf. In re Heather H., supra, 200 Cal. App.3d 91, 95-96 [where adequacy of oathtaking is not raised at trial in dependency proceeding, it is usually deemed waived on appeal].)
*837 (17) In any event, the amendments were superfluous, and not necessary to the disposition. The court could have based its ruling on the basis of the original petition alone. The fact that it made additional findings that were supported by the evidence and that would conceivably support the disposition reached here does not require the entire proceeding to be reversed so that those unnecessary findings can be removed.
Moreover, even if erroneous, the amendments did not prejudice Father. The allegations of the original petition alone are sufficient to sustain the court's jurisdictional and dispositional orders, without any of the additional findings concerning the family's polarization, litigation efforts, or lack of progress in therapy. This case is therefore distinguishable from In re Neal D., supra, 23 Cal. App.3d 1045, or In re J.T., supra, 40 Cal. App.3d 633, where the parents were not sufficiently apprised of the basis for the juvenile court's assertion of authority. When reviewing a judgment based in part on excludable evidence, we first strip away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding. (In re L.S. (1987) 189 Cal. App.3d 407, 415 [234 Cal. Rptr. 508]; In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1132-1133 [200 Cal. Rptr. 789].) In this case we conclude that sufficient evidence remains. We therefore refuse to reverse because of the amendments.[11]

DENIAL OF ALL VISITATION
Father's final contention is that the trial court abused its discretion by terminating all visitation between Father and Daniel. He argues that noncustodial parents have the right to visit their children, and that the court cannot deny all visitation without a clear showing that any contact would prove detrimental to the child. He complains that the court's findings did not include a finding of detriment, that the evidence did not support such a finding, and that the court should instead have ordered supervised visitation. We disagree.
(18a) When reviewing a dispositional order, we consider whether a preponderance of the evidence supports the court's judgment. (In re Cheryl H., supra, 153 Cal. App.3d 1098, 1113-1115.) We must uphold the order if there is any substantial evidence, contradicted or uncontradicted, to support the judgment. (Id. at pp. 1132-1133.)
Under section 361, the court can limit the control to be exercised by any parent. The limitations shall not exceed those necessary to protect the child. (§ 361, subd. (a).)
*838 (19) Here, we find no express statement by the trial court that it was necessary for Daniel's protection to terminate all visitation between Father and Daniel, but we do find a statement that the previous order had not been sufficient to protect him. For purposes of review, we will assume that the trial court found that it was necessary for Daniel's protection to terminate all visitation with his Father. (See § 361, subd. (a); Michael U. v. Jamie B. (1985) 39 Cal.3d 787, 792-793 [218 Cal. Rptr. 39, 705 P.2d 362]: where the parties have not requested a statement of decision or findings of fact, court may imply necessary finding.)
(20) Initially, we point out that Father made no arguments at the dispositional hearing against the trial court's order of no visitation. He did not ask for supervised visitation, or complain that no visitation was unfair. Instead, he appears to have joined in the attempt to avoid a full dispositional hearing. We could infer that, having lost the jurisdictional aspect of the case, he implicitly accepted the trial court's judgment concerning disposition. We believe that under these circumstances, his silence could be construed as a waiver on this issue. (Cf. In re Jennifer V. (1988) 197 Cal. App.3d 1206, 1209-1210 [243 Cal. Rptr. 441]. There, the parties apparently stipulated to the dispositional order, but then appealed the jurisdictional order, a nonappealable order. The appellate court noted that the parent can accede to a dispositional order while retaining the right to contest the jurisdictional finding. The court analogized to a criminal proceeding in which a convicted defendant accepts a sentence of probation, but does not waive the right to appeal the conviction itself.)
(18b) Nevertheless, we have considered the record and find that substantial evidence supports the trial court's decision. In 1986, the juvenile court rendered its judgment that Father had molested Daniel (a judgment that Father did not appeal). In addition to that finding of molest, the trial court had evidence during the 1988 hearing that continued contact might be detrimental to Daniel. Father testified that despite the previous judgment of sexual abuse, he had subsequently taken Daniel into his bed on at least 10 separate occasions.
There was also evidence that Daniel's state of mind focused on the molest by Father, that Daniel was under great stress because of the alleged molest, that he was "angry" and "sick to his stomach" over it, and that he never wanted to see his father again. These facts are similar to those in In re Cheryl H., supra, 153 Cal. App.3d 1098, 1132, where the court upheld an order of no contact between a father and daughter, finding that it was not in the daughter's best interest to continue visitation with the father who had molested her.
*839 Although the evidence here might have supported an order of closely supervised visitation, the evidence of stress on Daniel is equally supportive of a no contact order. (See In re Danielle W. (1989) 207 Cal. App.3d 1227, 1238 [255 Cal. Rptr. 344] [appellate court found it reasonable that court had ordered no contact with mother until child wanted it where mother had not protected children from sexual abuse by stepfather and where evidence showed child was angry at mother and did not want to see her. The appellate court considered proper juvenile court's concern with possibility of adverse psychological consequences to child].) It is not our function to weigh the credibility of the witnesses or resolve conflicts in the evidence. (In re Donald R. (1987) 195 Cal. App.3d 703, 715 [240 Cal. Rptr. 821].) Rather we must indulge in all reasonable inferences to support the findings of the juvenile court and must review the record in the light most favorable to the juvenile court's orders. (Ibid.) We therefore find that substantial evidence supports the trial court's order of no visitation. There was no abuse of discretion.[12]

CONCLUSION
We find no violation of Father's rights to due process in the trial court's limitations on expert witnesses or its amendment of the supplemental petition. We also find no abuse of discretion in the dispositional order. Accordingly, we affirm the judgment.
Cottle, J., and Bamattre-Manoukian, J., concurred.
Appellant's petition for review by the Supreme Court was denied August 1, 1990.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.
[2] Heather did appeal, however, and the jurisdictional finding as to her was reversed on appeal. (In re Heather H., supra, 200 Cal. App.3d 91.)
[3] He did raise the issue of bias at trial.
[4] Neither Sherwood nor any other witness was recalled at the dispositional phase.
[5] These statutes have since been repealed and reenacted, with some changes, as Health and Safety Code sections 1795-1795.26. The new statutes became effective January 1, 1989.
[6] The new version of the statute also denies the parent access if the health care provider determines that access would have a detrimental effect on the minor's physical safety or psychological well being. (Health & Saf. Code, § 1795.14, subd. (a)(2).)
[7] In his supplemental brief, Father alleges (apparently for the first time) that the court itself holds the privilege for the minor, that it should therefore have been the only one to claim the privilege on Daniel's behalf, and that the information was not privileged as to the court. We did not find in any of the citations given by Father any power by the court to compel disclosure of a dependent child's psychiatric records or testimony. In any event, we do not think that Father has standing to argue that the wrong person asserted the privilege. (Cf. In re Fred J., supra, 89 Cal. App.3d 168, 178-179, where court found lack of standing by mother to protest admission of testimony of children's psychiatrists; any error was only as against children who had not appealed.)
[8] Father cites a third case in his opening brief for the proposition that he has a constitutional right to present evidence in his own behalf. (See Walker Min. Co. v. Indus. Acc. Com. (1939) 35 Cal. App.2d 257 [95 P.2d 188].) That case does not, however, discuss the issue of privilege as it relates to the alleged right to present evidence.
[9] At oral argument, Father for the first time cited People v. Boyette (1988) 201 Cal. App.3d 1527 [247 Cal. Rptr. 795] in support of his argument that the privilege must yield. In Boyette, a five-year-old child testified against the defendant. The defendant sought psychiatric and other records of the child and argued that their disclosure was necessary to determine the child's competency and credibility as a witness. The trial court refused to compel disclosure. The appellate court reversed, holding that the trial court should review the records in chambers to determine whether defendant's constitutional rights to a fair trial might overcome any privilege. (Id. at p. 1534.)

Boyette involved a criminal defendant and the rights accorded to one charged criminally. We refuse to extend the holding of Boyette to a section 300 dependency action. No criminal charges are involved here. Accordingly, we do not find Boyette persuasive or controlling.
[10] This information was to include, among other things, information from other mental health professionals who had been involved with the parties. Whether Dr. Sherwood chose to examine such evidence was left to her discretion. The court did not attempt to keep such information from her. But neither did it encourage her to view it.
[11] In light of the foregoing analysis, we need not reach the department's arguments that the findings were proper, that the amendments were of no legal consequence because a section 387 petition would not lie as against Father, or that the amendments were proper under the rules of variance in pleadings.
[12] The cases cited by Father on the issue of visitation are distinguishable. In re Heather P. (1988) 203 Cal. App.3d 1214, 1228 [250 Cal. Rptr. 468] and In re Jamie M. (1982) 134 Cal. App.3d 530, 540 [184 Cal. Rptr. 778] both involved parents with mental illness. The courts there noted that harm to the child should not be presumed merely from the fact that a parent suffered from a mental illness. We can infer that the court in this case did not make such a general presumption, but rather considered the specific harm that had already been done to Daniel, and the effect on the child psychologically from continued contact.

Some of the other cases cited dealt with visitation between a parent and child where there was no showing of actual harm to the child. (See In re Marriage of Birdsall (1988) 197 Cal. App.3d 1024, 1030 [243 Cal. Rptr. 287] [homosexual father].)