[No. D045713. Fourth Dist., Div. One. July 20, 2005.]

In re SAVANNAH M. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v.
SALLY S., Defendant and Appellant.

## COUNSEL

Laura L. Furness, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Linda M. Fabian, under appointment by the Court of Appeal, for Minors.

OPINION

**McDONALD, Acting P. J.**—Sally S. (Mother) appeals orders of the juvenile court declaring her daughters, Savannah M. and Sierra M., dependent children within the jurisdiction of the court. On appeal, Mother contends the evidence is insufficient to support the court's jurisdictional findings that Savannah is a child described in Welfare and Institutions Code section 300, subdivision (b)[1] and Sierra is a child described in section 300, subdivision (j).

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2003 twin sisters Savannah and Sierra were born to Mother and David M. (Father).

On November 4, 2004, David R. (David), a family friend whom Father had met at work two years earlier, visited the home of Mother and Father, arriving in the afternoon. David was a 60-year-old father of seven children and had always talked about his children in a loving, fatherly way. When Father arrived home from work at about 3:45 p.m., Mother and David were drinking beer. At about 6:00 p.m., Father and Mother went to a store to buy milk, diapers and more beer, leaving the 19-month-old twin girls in David's care.[2] When they returned about 20 to 30 minutes later, they saw David changing Savannah's diaper on the couch. They thought it strange because David had previously told them he does not change diapers and the twin's diapers had been changed before Mother and Father left.[3] Mother asked David: "Are you messing with my daughter?" David replied: "I'd never do that." He said he was merely changing her diaper. Mother and Father argued over whether David was trustworthy. Mother stated she did not fully trust David. Father stated he trusted David and did not believe David was doing anything inappropriate.

At about 8:30 p.m., Mother and Father went to the store to buy cigarettes for David.[4] They apparently returned about 30 minutes later.

At about 1:40 a.m., Mother and Father went to the store to exchange the cigarettes bought earlier for the correct brand. When they left, Savannah was asleep on their bed and Sierra was asleep on the couch. When they returned

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] David and his girlfriend had babysat Savannah and Sierra on two prior occasions without incident.

[3] Mother later checked the diaper David had removed and it did not appear to need changing.

[4] Mother and Father refused David's offer of $100 to buy him hard liquor, because they would have had to travel to a more distant store.

home about 20 to 30 minutes later, their bedroom door was ajar with the lights off. They heard David say, "suck this." As Mother entered the bedroom, she saw David lying on the bed next to Savannah, who was awake, naked below her waist, and on her knees bouncing on the bed. According to Mother, David had his right hand on Savannah's shoulder, apparently guiding her head to his crotch.[5] David's pants were down and his penis was exposed. Mother yelled, "What are you doing?" She then told Father to "get him [David] out of here!" Father grabbed David and shoved him out the front door, slamming it behind him. Father then called police to report the incident.

At 2:04 a.m., police were dispatched to the home of Mother and Father regarding a reported molestation. Savannah and Sierra were taken into protective custody by police. Police later apprehended David, who was walking along a street apparently intoxicated.

On November 9 a San Diego County Health and Human Services Agency (Agency) social worker interviewed Mother and Father regarding the incident. Father denied being intoxicated, but admitted drinking three or four 24-ounce beers between 3:45 p.m. on November 4 and 2:00 a.m. on November 5. Mother also denied being intoxicated, but admitted drinking about one 24-ounce beer and slightly more than one shot of whiskey during that period. Father did not believe David was intoxicated while he was at their home.[6] David did not slur his speech or exhibit any unusual movements. Mother told the social worker the incident made her not trust anyone and she would never again leave her children alone with anyone else. Mother told the worker she would like the family to receive counseling, parenting classes and in-home services to help cope with the incident.

A physical examination of Savannah showed a superficial laceration of her labia minoria, consistent with either sexual abuse or another cause.[7] A physical examination of Sierra was inconclusive regarding any sexual abuse.

On November 10 Agency filed section 300 juvenile dependency petitions for both Savannah and Sierra. The juvenile court found prima facie showings had been made that the children were persons described in section 300 and ordered them detained in foster care.

---

[5] However, according to one report by Father, David had his right hand between Savannah's legs near her "private area."

[6] However, in an interview with police after the incident, *Mother* apparently admitted David was drunk when Mother and Father went to the store, leaving their children alone with him.

[7] Savannah's examining doctor apparently commented she did not know how the laceration got there. Another doctor who reviewed photographs of Savannah's laceration concluded it could have been caused by either sexual assault with penetration or an accidental fall.

In Agency's jurisdiction and disposition hearing report dated December 6, Agency noted that Mother and Father showed "family strengths" of being: "Cooperative, [willing] to accept services, motivated to resolve problems, employed, raised children for a significant amount of time, parent/child attachment." Mother and Father had begun individual therapy and an eight-week parenting course. Agency set forth its "Assessment/Evaluation:" "These two toddlers were brought into protective custody by law enforcement after one was sexually assaulted by a family acquaintance. The parents provided prompt intervention after they literally caught the perpetrator in the act by contacting law enforcement, which ultimately led to the capture of the alleged perpetrator. It is obvious the parents' deep love for their children is genuine and that they have expeditiously immersed themselves in services initially recommended. However, what remains of concern is there appears to have been subtle yet intentional signals demonstrated by the alleged perpetrator of what his intentions were with these young children. He continually urged the parents to vacate their premises with requests for alcohol and/or cigarettes. On one occasion, he offered them one hundred dollars if they would heed his request. Unwittingly, the parents heeded his wishes by walking to a nearby store to purchase the wanted items, despite one of them verbalizing feelings of mistrust when they found the alleged perpetrator changing Savannah's diaper after they arrived home from the first of three trips completed that evening. It is difficult to say if the parents' oversight could be related to being naive to sections of society considered to be perverse or being under the influence of alcohol, which led to impaired judgment. However the prior situation is scrutinized, it had raised questions of the parents['] ability to protect their children, and it is the recommendation of . . . the Agency that each parent undergo a psychological evaluation . . . which will be used as a tool to provide valuable feedback when these children can be returned to their parents['] custody."

On December 22 Agency filed amended dependency petitions for Savannah and Sierra. The amended petition for Savannah included an allegation she was a child described under section 300, subdivision (b). The amended petition for Sierra included an allegation she was a child described under section 300, subdivision (j).

On January 5, 2005, a jurisdictional and dispositional settlement conference was held. Mother and Father waived their right to trials on the amended petitions and submitted the matters to the juvenile court based on Agency's

reports and other documents. The court made true findings on the jurisdictional allegations that Savannah was a child described under section 300, subdivision (b) and Sierra was a child described under section 300, subdivision (j). The court placed the children in the home of a relative (i.e., their maternal grandmother).

Mother timely filed a notice of appeal.[8]

## DISCUSSION

## I

### *Standard of Review*

"When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]" (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564 [135 Cal.Rptr.2d 72].) However, substantial evidence is not synonymous with *any* evidence. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100 [109 Cal.Rptr.2d 583]; *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871 [269 Cal.Rptr. 647].) A decision supported by a mere scintilla of evidence need not be affirmed on appeal. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 652 [51 Cal.Rptr.2d 907].) Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding*

---

[8] Mother's notice of appeal is from "[a] judgment [on January 5, 2005] made at a disposition hearing declaring a minor to be a dependent child of the juvenile court." As we recently noted in *In re Javier G.* (2005) 130 Cal.App.4th 1195 [30 Cal.Rptr.3d 837], "[t]he jurisdictional finding under section 300 . . . is interlocutory and not appealable, and thus any issue pertaining to it must be raised in a timely appeal of the dispositional order. [Citation.]" In the circumstances of this case, we construe Mother's notice of appeal as challenging the juvenile court's dispositional orders on January 5, 2005, which were based on the court's jurisdictional findings on that date. Accordingly, Mother's challenge of the court's jurisdictional findings is reviewable on appeal from the dispositional orders. (*Ibid.*; *In re Athena P.* (2002) 103 Cal.App.4th 617, 624 [127 Cal.Rptr.2d 46] ["[A]ny challenge to the jurisdictional findings would have to be raised in an appeal from the dispositional order."]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196 [23 Cal.Rptr.2d 482].)

[citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191], italics added.) "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." (*Roddenberry v. Roddenberry, supra,* at p. 652.)

■ Section 355, subdivision (a) provides: "At the jurisdictional hearing, the court shall first consider only the question whether the minor is a person described by Section 300. Any legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence. Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300. . . ." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the [child] to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429].) "Thus[,] *previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur.* [Citations.]" (*In re Ricardo L., supra,* 109 Cal.App.4th at p. 565, italics added.)

II

*Jurisdictional Findings in This Case*

Mother contends the evidence is insufficient to support the juvenile court's jurisdictional findings that Savannah was a minor described in section 300, subdivision (b) and Sierra was a minor described in section 300, subdivision (j).

A

Section 300 provides:

"Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶]

"(b) The child has suffered, or *there is a substantial risk* that the child will suffer, serious physical harm or illness, as a result of . . . the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . . *The child shall continue to be a dependent child pursuant to*

*this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.* [¶] . . . [¶]

"(j) The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and *there is a substantial risk* that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.

"It is the intent of the Legislature that nothing in this section disrupt the family unnecessarily or intrude inappropriately into family life . . . ." (Italics added.)

■ "After hearing the evidence [at the jurisdictional hearing pursuant to sections 300 and 355], the court shall make a finding, noted in the minutes of the court, whether or not the [child] described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained. If it finds that the [child] is not such a person, it shall order that the petition be dismissed and the [child] be discharged from any detention or restriction theretofore ordered. If the court finds that the [child] is such a person, it shall make and enter its findings and order accordingly." (§ 356.) The purpose of a dependency proceeding is to *protect the child*, rather than prosecute or punish the parent. (§ 300.2; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494]; *In re Malinda S.* (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244], superseded by statute on another ground as noted in *People v. Otto* (2001) 26 Cal.4th 200, 207 [109 Cal.Rptr.2d 327, 26 P.3d 1061].)

B

■ We conclude substantial evidence does not support the juvenile court's jurisdictional finding that Savannah was a child described in section 300, subdivision (b). Agency's amended petition alleged there was a substantial risk Savannah will suffer serious physical harm as a result of Mother's and Father's negligent failure on November 5, 2004, to protect Savannah from David, who had changed Savannah's diaper under strange circumstances and had been consuming alcohol. The three elements for a section

300, subdivision (b) finding are: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the [child], or a 'substantial risk' of such harm or illness." (*In re Rocco M., supra*, 1 Cal.App.4th at p. 820.) The third element, however, effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). (*Id.* at p. 824; *In re Ricardo L., supra*, 109 Cal.App.4th at p. 565; *In re Alysha S., supra*, 51 Cal.App.4th at p. 399.)

■ Based on the record in this case, the evidence is insufficient to support a finding that *on January 5, 2005*, Savannah was at substantial risk of *future* serious physical harm based on her parents' conduct on November 4 and 5, 2004. Although both Mother and Father thought David's conduct in changing Savannah's diaper earlier during the evening of November 4 was "strange," there is nothing in the circumstances of his conduct that should have caused them, or any "reasonably aware" parent for that matter, to reasonably fore see David would later sexually abuse Savannah. Although on a prior occasion David may have told Mother and Father he "does not" change diapers, that generalized statement would not preclude them, or any reasonable parent, from inferring from his conduct that his prior statement was not absolute and he occasionally made exceptions to his policy of not changing diapers. Mother and Father could reasonably have thought that David, placed in a position of temporarily being the sole caretaker of their twin daughters, was attempting to provide appropriate care by changing Savannah's diaper (albeit by apparently wrongly believing it needed to be changed).[9] When challenged by Mother, David denied doing anything inappropriate and stated he was merely changing Savannah's diaper. That diaper-changing incident was insufficient to find Mother and Father were negligent in failing to protect Savannah from David's apparent subsequent sexual abuse of her.

Despite their suspicions of David, without clearer evidence of David's sexual or other wrongful intentions as to Savannah, Mother and Father, or any "reasonably aware" parent in their position, would not be required to be prescient or hypervigilant. Absent such clearer evidence of wrongful intent, reasonable parents should be permitted to trust, and have faith in, a family friend they have known for two years who had otherwise never given them

---

[9] As noted *ante*, Mother and Father had changed Savannah's diaper before they went to the store the first time. Also, Mother checked that diaper afterward and it did not appear to need changing.

any reason to doubt his good intentions toward their or other children.[10] Given the diaper-changing incident, the juvenile court could not reasonably find Mother and Father were negligent in failing to protect Savannah from David's apparent subsequent sexual abuse of her.

Agency suggests Mother's and Father's alcohol use may have affected their judgment in allowing David to manipulate them into repeatedly going to the store and leaving their daughters in his care. Although alcohol use in the circumstances of this case may show they were negligent, Agency does not appear to argue that all parents of toddlers must refrain from consuming alcohol or entertaining friends who consume alcohol. In this case, Mother's and Father's alcohol use was not sufficient, in combination with the diaper-changing incident and other circumstances, to support a finding under section 300, subdivision (b).

Furthermore, as noted *ante*, the purpose of section 300, subdivision (b) is to protect the child from a substantial risk of *future* serious physical harm and that risk is determined as of the time of the jurisdictional hearing. Assuming arguendo Mother and Father may have been somewhat negligent in allowing David to temporarily care for Savannah after the diaper-changing incident, there is no evidence to support a finding that *on January 5, 2005* (two months later), Savannah was at substantial risk of *future* serious physical harm from being placed in the care of David or another custodian who would sexually abuse her. On finding David apparently sexually abusing Savannah after their third trip to the store, Mother's and Father's reaction was entirely appropriate. They immediately removed David from their home and contacted the police to report the incident. Thereafter, Mother confirmed she would never trust David or anyone else to care for her daughters. Although Agency does not (and could not reasonably) argue Mother and Father would ever allow David to care for their daughters in the future, Agency argues Mother and Father, especially in light of their alcohol use, might allow another person like David to manipulate them into caring for their daughters. However, that argument is mere speculation and is unsupported by reasonable inference from the evidence at the time of the January 5, 2005 hearing. As the court stated in

---

[10] We do not doubt some parents (e.g., those with experience or training in the modus operandi of child molesters) may have found David's diaper-changing and other conduct that evening sufficiently suspicious for them to avoid leaving their children alone with him. However, the record does not show Mother or Father had any such experience or training and they, as "ordinary" parents, should not be charged with having sufficient suspicions that they could not reasonably leave their children with David.

*In re Steve W.* (1990) 217 Cal.App.3d 10, at page 22 [265 Cal.Rptr. 650]: "The trial court's concern here was not so much that [the mother] would resume her relationship with [her abusive friend] but that she would enter into a new relationship with yet another abusive type of person. This reasoning is troubling. . . . It is not unreasonable to be concerned whether [the mother] would enter a relationship which might threaten [the child's] well-being. But, the court cannot make this a basis of removing the physical custody of the child from the parent if its decision is based on pure speculation. It must be based on substantial evidence. There was evidence that [the mother's] selection of partners was not conducive to the raising of children as evinced by her two previous relationships. All other factors, however, support a finding that she would not enter a relationship detrimental to [the child]. At the time of the hearing [the mother] had begun counseling, she was living in an adequate apartment and was self-supporting. There was no evidence that she was then involved in a relationship with anyone. . . . *[S]peculation about the mother's possible future conduct is not even sufficient to support a finding of dependency much less removal of the physical custody of the child from the parent.* The court's conclusion here is supported by little more than speculation, and such does not suffice as substantial evidence to support removal." (Italics added.) The instant case is analogous to a one-time occurrence of physical abuse of a child by a caretaker friend in *In re Rocco M.,* *supra*, 1 Cal.App.4th at page 825, in which the court stated (albeit in possible dicta): "There was no evidence appellant should have anticipated that [the child] might be physically abused by [the friend], no evidence such conduct was repetitive, and no demonstrated danger it would recur. Indeed, there was no evidence [the child] would ever again be placed in [the friend's] care. We see little indication of physical danger in the general lack or inadequacy of [the parent's] supervision." Similarly, in *In re Alysha S., supra,* 51 Cal.App.4th at page 399, the court concluded an allegation of a father's inappropriate touchings of a child one year earlier was insufficient to allege those acts may continue in the future and therefore was insufficient to interfere with the family.

Based on the record at the time of the January 5, 2005 hearing, substantial evidence does not support the juvenile court's finding there was a substantial risk, *at the time of the hearing*, that Savannah will suffer, *in the future*, serious physical harm as a result of her parents' negligent failure to protect her from the conduct of a custodian or caretaker. (§ 300, subd. (b).)

## C

Because Agency's allegation, and the juvenile court's jurisdictional finding, under section 300, subdivision (j), regarding a substantial risk of future serious physical harm to *Sierra* was based wholly on Mother's and Father's purported negligence in failing to protect Savannah from David's sexual abuse on November 5, 2004, we also necessarily conclude that substantial evidence does not support a finding there was a substantial risk, *at the time of the hearing*, that Sierra will suffer, *in the future*, serious physical harm as a result of her parents' negligent failure to protect Savannah from the conduct of a custodian or caretaker. (§ 300, subd. (j).) Not only is there insufficient evidence to support a finding Mother and Father negligently failed to protect Savannah from David's apparent sexual abuse, but there also is insufficient evidence that *Sierra* will be at substantial risk of serious physical harm *in the future* based on Mother's and Father's purported negligent failure to protect Savannah. There is only speculation, not substantial evidence, that Mother and Father would, in the future, allow Sierra to be alone with David or another custodian who would sexually abuse her.

Accordingly, based on the record at the time of the January 5, 2005 hearing, substantial evidence does not support the juvenile court's finding there was a substantial risk, *at the time of the hearing*, that Sierra will be abused or neglected, *in the future*, as a result of her parents' negligent failure to protect Savannah from the conduct of a custodian or caretaker. (§ 300, subd. (j).)

## III

### *Motion to Strike*

Mother filed a motion to strike a portion of a letter brief filed by appellate counsel for Savannah and Sierra, in which their counsel referred to a recent change in their placement from their maternal grandmother to foster care. Because that reference is not supported by a citation to the appellate record and clearly refers to a matter occurring after the juvenile court's order challenged in this appeal, we grant Mother's motion to strike and, accordingly, disregard that portion of the letter brief. (Cal. Rules of Court, rule 14(a)(1)(C); *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541]; *In re Elise K.* (1982) 33 Cal.3d 138, 149 [187 Cal.Rptr. 483, 654 P.2d 253]; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 830 [269 Cal.Rptr. 624]; *In re James V.* (1979) 90 Cal.App.3d 300, 304 [153 Cal.Rptr. 334].)

## DISPOSITION

The orders are reversed and the matters are remanded with directions that the court vacate those orders and issue new orders: (1) finding Savannah and Sierra are not dependent children within its jurisdiction under section 300; (2) dismissing Agency's section 300 petitions as to those children; and (3) ordering those children discharged from any detention or placement theretofore ordered.

McIntyre, J., and O'Rourke, J., concurred.