Filed 11/19/15  R.W. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| R.W.,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>　　　Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>　　　Real Party in Interest. | A146185<br><br>(Contra Costa County<br>Super. Ct. Nos. J14-01029, J14-01030) |

Petitioner R.W.—father of two boys, 10-year-old N.W. and eight-year-old A.W.—challenges the juvenile court's August 24, 2015 order denying him family reunification services and visitation and setting a Welfare and Institutions Code section 366.26 hearing for December 14, 2015.[1]  We shall deny the petition for the reasons explained below.

## FACTUAL AND PROCEDURAL BACKGROUND

The boys' mother died of cancer in January 2013 and their adult sister, S.R., became their legal guardian.[2]  Because petitioner was incarcerated when the mother died,

---

[1]  Unless otherwise noted all statutory references are to the Welfare and Institutions Code.

[2] The boys' mother had five children, including S.R., N.W. and A.W.  Petitioner is the biological father of only N.W. and A.W.  This petition concerns only them.  He and their mother had been living together as a family before petitioner's incarceration.

1

he was not then available to care for the children. The boys remained in their adult sister's care even after petitioner was released from custody in September, 2013, although he expressed a desire to have them live with him "as soon as [he] got [his] life together."

On September 25, 2014, the Contra Costa County Children and Family Services Bureau (bureau) filed petitions, pursuant to section 300, subdivision (b), alleging that the children were at risk due to the guardian's alcohol abuse. The bureau alleged that S.R. had an alcohol abuse problem that put the children at risk of harm because she drove while intoxicated. On or about September 15, 2014, she reportedly was involved in an automobile accident with a pedestrian while she was driving under the influence with her biological child, resulting in serious injury to both of them. The next day the juvenile court detained the boys, removed them from S.R.'s care, and placed them with petitioner. Pursuant to stipulation, the court assumed jurisdiction on November 6, 2014. On March 10, 2015, the court terminated S.R.'s guardianship of her younger brothers, placed them in petitioner's custody, and ordered that petitioner be provided with family maintenance services. However, on April 17, 2015, the bureau filed a supplemental petition alleging that petitioner had been arrested on April 8 for second degree robbery, was detained in the Santa Rita jail, that he had a "high bail," and was expected to remain in jail. Petitioner's wife would not care for the boys and as a result their care was entrusted to their paternal grandmother. Based on an April 15, 2015 visit with the boys at their grandmother's home, the social worker reported that they appeared to be in good health, but were subdued. On April 20, 2015, the court detained the boys with placement in the relative's home.

In the dispositional report on the supplemental petition, the bureau recommended that petitioner receive reunification services. The report, signed by the case worker and her supervisor on July 21, 2015, and filed August 24, 2015, summarized 17 prior allegations of abuse or neglect involving one or both of the boys from 2008 through 2015, three of which occurred while the boys were in petitioner's custody.

The report also discussed petitioner's lengthy criminal history. Between October 1987 and April 2015 he had been arrested for vehicle theft, possession of drugs,

2

obstructing an officer, receiving stolen property, being a felon in possession of a firearm, carrying a loaded firearm, carrying a concealed weapon in a vehicle, transporting or selling illegal drugs, robbery, battery on a spouse or ex-spouse, willful cruelty to a child, battery on a person, passing false checks/records, evading a peace officer, driving with a suspended license, failure to prove financial responsibility, and second degree robbery. Between 1992 and 2011 he suffered five criminal convictions:  (1) 1992 misdemeanor conviction of carrying a loaded firearm in a public place; (2) 1992 felony conviction of transporting/selling a controlled substance; (3) 1994 felony conviction for second degree robbery; (4) 2005 felony conviction for passing false checks/records; and (5) 2011 conviction for vehicle theft.

The boys' stated preference was to remain with their paternal grandmother and have regular contact, including overnight visits, with their older sister and former legal guardian, S.R.  The boys had had no contact with their father since he was jailed.  As reported by their counsel on May 11, 2015, however, they both stated they would like to see him (but not their stepmother).

On August 24, 2015, the bureau filed a further memorandum to provide the court with updated information.  That memorandum detailed 19 counts for second degree robbery and assault with a semiautomatic weapon with which petitioner was currently charged.  It also updated his criminal history, showing that he had actually been convicted of 12 felonies between 1992 and 2011 for vehicle theft, forgery, second degree robbery, attempted second degree robbery, and sale of a controlled substance. Furthermore, the bureau changed its prior recommendation and recommended that petitioner's reunification services be terminated and that the court set a section 366.26 hearing.

Petitioner attended the status hearing on July 23, 2015, and the contested disposition hearing on August 24, 2015, via telephone from jail.

At the July 23 session counsel for the minors opposed visitation with petitioner until the boys' therapist provided input about the advisability of visitation.  She noted the boys had been through "an extensive amount of loss, abandonment and trauma."  The

3

court agreed with these concerns and ordered that there be no visitation with petitioner until their therapist offered an opinion about whether visitation would be beneficial. The court also commented that petitioner was facing a potential period of incarceration that extended "well beyond" the time for reunification.

At the August 24, 2015 disposition hearing, the minor's counsel continued to oppose visitation with petitioner—this time, based on the therapist's reported recommendation that the children were not yet sufficiently emotionally stable for visitation with petitioner. Counsel clarified that ultimately she would support visitation with petitioner—but not yet. She relayed the therapist's opinion that visitation at this point would be inappropriate because of its potential to "be disruptive to the stability [the boys] are trying to establish in their grandmother's home." She explained her view to the boys' grandmother, in order that it be relayed to petitioner, that the sooner the boys were able to address in therapy the grief and trauma they had already experienced, the sooner counsel would support visitation with petitioner.

Bureau social worker Barbara Crespo was called by petitioner's counsel and testified at the hearing. She explained that based on input from the district attorney she had changed her initial recommendation, contained in the July 23, 2015 report, that petitioner be given reunification services. The deputy district attorney suggested that the pending case against petitioner was strong and he anticipated that petitioner would remain incarcerated "for quite a while."[3] After Crespo consulted with her supervisors, the bureau determined it would be in the children's best interest to establish a permanent situation, rather than wait for petitioner to be released. Crespo also noted that she had asked the boys a few times about whether they wanted to have contact with their father; although they indicated they wanted to see their sister, they never mentioned wanting to see petitioner.

---

[3] When Crespo asked specifically how long the expected sentence would be, the district attorney did not provide an exact duration, but said it would be "for a very long significant amount of time."

4

Petitioner argued that he had not yet had his preliminary hearing on the pending charges, much less been convicted of them. He conceded that the court "could deny reunification services" but requested that he be provided services if he were out of custody. He also argued against the visitation limitation and sought to have at least telephone contact with the children.

The boys' counsel supported the bureau's recommendation to deny services, pointing out that although petitioner had not yet been convicted of the pending charges, he nonetheless had a criminal history that allows the court, pursuant to section 361.5, subdivision (b)(12),[4] to bypass reunification services.

Before ruling, the court summarized the tragedy the boys have suffered: (1) losing their mother, (2) their father being unavailable to care for them because he was incarcerated, (3) losing their guardian/sister due to her own issues, and (4) being thrown in with yet another caregiver with whom they had little prior relationship when petitioner was again incarcerated. The court characterized petitioner as having "sold a pack of goods" to the court—dealing with his children in court proceedings and the very same day committing robberies. The court noted that in order to provide petitioner with services, it would have to find by clear and convincing evidence that reunification was in the boys' best interests; however, there was "absolutely no evidence upon which to base that finding." Rather, it found that reunification services would be "highly detrimental to these boys who are in desperate need of being in a forever home with a forever caregiver who will think of nothing but these boys and provide them with permanency and stability which they have long deserved." Furthermore, the court decided to follow the mental

---

[4] Section 361.5, subdivision (b) provides, in pertinent part: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (12) That the parent or guardian of the child has been convicted of a violent felony as defined in subdivision (c) of Section 667.5 of the Penal Code." Penal Code section 667.5, subdivision (c)(9) defines "any robbery" as a violent felony. Thus, father's 1994 conviction for second degree robbery qualifies as a violent felony.

health expert's guidance and not allow contact with petitioner because it would be detrimental for the children.

After the court attempted to give petitioner notice of his hearing date and his right to appellate review, it became apparent that he had previously hung up the phone. Counsel, while in court, repeatedly attempted to re-establish the call, but was unable to do so. The court then directed the clerk to serve notice of his right to file a writ petition on petitioner at the Santa Rita jail.

On September 2, 2015, petitioner filed notices of intent to file writ petition regarding both boys. After the petition was filed on September 26, 2015, we issued an order to show cause on September 28, 2015, and an opposition was filed on October 13, 2015.

## DISCUSSION

The petition argues that (1) the juvenile court improperly shifted the burden of proof from the bureau to petitioner when it applied section 361.5, subdivision (b)(12) and that there is no substantial evidence to support the application of that section, (2) the court improperly delegated judicial authority to the children's therapist in deciding to deny visitation and applied the incorrect legal standard, and (3) there is no substantial evidence to support the finding that reunification services would be detrimental to the children, pursuant to section 361.5, subdivision (e)(1).

The standards by which the juvenile court determines and an appellate court reviews the decision to deny reunification services are well established. In general, when the juvenile court removes a child from a parent's custody, it must order reunification services to assist the parent overcome the problem(s) that led to the child's removal. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 106.) However, if a parent falls into one of various narrowly defined exceptions—"bypass provisions"—reunification services need not be provided because doing so would entail an "unwise" use of government resources. (*Ibid.*) If a bypass provision is applicable, the juvenile court must not order reunification services unless it finds by clear and convincing evidence that such services would be in the child's best interest. (§ 361.5, subd. (c).) Our review of an order denying

6

reunification services is for substantial evidence. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839.) We must decide if the evidence relied on by the juvenile court is "reasonable, credible, and of solid value, such that a reasonable trier of fact could find the court's order was proper based on clear and convincing evidence." (*Id.* at pp. 839-840.)

Petitioner's first argument—that the court improperly shifted the burden of proof to him because he had not yet been convicted of the pending charges and that there was a lack of substantial evidence to support the application of section 361.5, subdivision (b)(12), set out in footnote 4, *ante*—is frivolous. It is undisputed that petitioner had previously been convicted of second degree robbery, which is defined as a violent felony. It makes no difference that the pending charges against him have not yet been proven. The application of this statute is based on petitioner's prior conviction for second degree robbery. There is neither shifting of the burden of proof nor an absence of substantial evidence to support the court's decision.

Petitioner's next argument—that the court improperly delegated its authority to order visitation to the therapist—is not frivolous, but neither is it meritorious. Petitioner argues correctly that the juvenile court may not delegate its decision to permit or deny visitation to the child's therapist. (See *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138.) Relying on *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 837, he argues that the court must find that visitation would be detrimental to the child or jeopardize the child's safety to deny visitation. In *In re Nicholas B., supra,* at page 139 the court was concerned with allowing the therapist to have a "veto power" over reunification services. Nothing of the sort exists here. The therapist's concern that these children, who had experienced abandonment and loss, should experience a stable home with their grandmother before recontacting petitioner, was conveyed to the court by the boys' counsel. The court carefully weighed whether the boys really wanted to see petitioner or felt they were obliged to say that was their desire. The court exercised its own discretion to follow the therapist's advice, finding that "it would be detrimental for the children to have contact with" petitioner. Finally, it admonished the bureau, minor's counsel, and father's counsel to bring the matter to the court's attention, if the situation changed. In

7

short, there was no improper delegation of decision-making authority; the court properly made the decision, considering both the therapist's opinion and the desires of the children.

Finally, there is no lack of substantial evidence to support the finding that reunification services would be detrimental to the children. Section 361.5, subdivision (e) directs that when a parent is incarcerated, the court is to consider specified factors, including the child's age, the degree of parent-child bonding, and the length of the sentence, and order reasonable services unless it determines by clear and convincing evidence that those services would be detrimental to the child. (§ 361.5, subd. (e)(1); see also *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011.) In arguing that there is a lack of substantial evidence, petitioner fails to discuss the very evidence the juvenile court relied upon, specifically including the opinion of the boys' therapist that their immediate need for stability outweighed the immediate need for contact with petitioner. The apparent basis for that opinion—that the boys had lost their mother, been taken in by their older sister, been taken away from that sister, gone to their father who then was incarcerated, and then had to be cared for by their grandmother—is undisputed. Petitioner also disregards the court's reasonable inference that the boys, when they said they wanted to be in contact with their father, were expressing what they believed they should say, rather than what they actually felt, and the court's finding that father "is clearly an unfit parent in every respect."[5] The juvenile court's decision was supported by substantial evidence.

## DISPOSITION

For the reasons given above, the petition for an extraordinary writ is denied. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

---

[5] The juvenile court found that petitioner, while representing himself to the court as a good parent, was continuing his well-established life of crime, thereby manifesting "very selfish," "self-centered," and "dangerous" behavior.

8

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.

A145703