Filed 11/17/20  In re M.W. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.W. et al., Persons Coming Under the Juvenile Court Law. | C089646 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.W., <br><br> Defendant and Appellant. | (Super. Ct. Nos. JD239499, JD239500) |

In this appeal, Mo.W. (father) challenges the jurisdictional and dispositional orders of the juvenile dependency court related to his children, Mi.W. (age 10) and A.W. (age 12) (collectively the minors).  Father contends (1) there is insufficient evidence to support jurisdiction over the minors, (2) there is insufficient evidence of current risk to support the minors' removal from the paternal grandparents, (3) the domestic violence services ordered in father's case plan are not supported by substantial evidence, and

1

(4) the juvenile court abused its discretion in ordering that his visits be supervised by someone other than the paternal grandparents.  We will affirm the judgment.

BACKGROUND

On November 30, 2018, the Sacramento County Department of Child, Family, and Adult Services (Department) filed verified Welfare and Institutions Code section 300[1] petitions on behalf of the minors alleging risks to the minors under subdivisions (b)(1) and (c).

The petitions alleged the minors' mother and her boyfriend had a history of domestic violence and had engaged in domestic violence in front of her children, including the minors.  Mother and her boyfriend agreed to voluntary informal services, but then refused to participate in those services and violated five separate safety plans.

Mother's untreated psychiatric and/or emotional problems, combined with her intellectual disabilities, had impaired her judgment and ability to provide care, protection, and supervision to the minors.  Mother suffered from depression, bipolar disorder, and anxiety, but failed to follow up with counseling and medication.  She also had a borderline intellectual delay for which she received services until the services were terminated for nonattendance.

The petitions further alleged mother had failed to provide for the minors' medical, dental, mental health, and developmental needs.  It was not known when the minors had last seen a dentist.  A.W. needed a new nebulizer and to a see a doctor for her right ear.  The minors' referrals for mental health treatment were allowed to lapse.  Mother failed to fill Mi.W.'s psychotropic medication despite repeated reminders.  She also failed to reestablish services for the minors, who have developmental and speech delays.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

According to the petition, father's untreated psychiatric disorder, emotional issues, and substance abuse problems impaired his judgment and ability to provide care, supervision, and protection for minors. Father suffered from untreated bipolar disorder and also abused alcohol, opiates, and methamphetamine. He repeatedly refused to drug test. Mi.W. twice complained father physically abused him with a bat and a shoe.

In addition, the petitions alleged Mi.W. was suffering or had suffered emotional damage as evidenced by suicidal ideation and self-harming behaviors. Mi.W. was held on section 5150 holds on October 10, 2018 and November 6, 2018 for holding a knife to his neck and threatening to stab himself, as well as for cutting his arm with scissors. Mi.W. had expressed suicidal ideation and suffered escalating aggressive behaviors. He complained that he feared physical abuse by father. Despite recommendations for counseling, mother failed to obtain those services or Mi.W.'s prescription for Risperdal.

An associated November 30, 2018 application for a protective custody warrant provided more information regarding the circumstances and living arrangements relevant to father's contentions on appeal. Mi.W. reported witnessing his mother fighting with her boyfriend five times, while A.W. denied witnessing any such fighting. Father transported the minors to stay with their mother on weekends, and the minors lived with their father and paternal grandparents during the week. At the end of September 2018 and again in early October, Mi.W. complained he was afraid of his father, who he said called him names, had slapped him, pulled his pants down and hit him with a shoe. According to Mi.W., on another occasion father hit him in the face with a shoe. Mi.W. also complained father had hit him in the knee with a bat. The later filed jurisdiction/disposition report indicated that a mandated reporter observed two bruises on Mi.W.'s knee. A.W. denied that father hit Mi.W. or called him names, and the paternal grandparents denied that father hurt Mi.W., that Mi.W. was scared of father, or that father abused drugs.

3

The day after Mi.W.'s October 10, 2018 threat to stab himself with a knife, he threatened to kill himself again while at school. The school called father to inform him of Mi.W.'s statements and father said he would put Mi.W.'s school in a "flash" if Mi.W. was not there when father arrived. As a result of father's statement, the school went on lockdown and father was banned from bringing the minors to the campus. On October 31, 2018, during a social worker visit, Mi.W. threatened to harm himself but police were able to calm him. Mother was referred to Sacramento County Mental Health. She agreed to place the minors with their paternal grandparents and the grandparents agreed to supervise the minors with father. Father refused Department services.

On November 6, 2018, Mi.W. cut his wrist with scissors at school and was transported to a hospital. Attempts to contact mother and father were unsuccessful. The school worried A.W. was also acting out behaviorally and that the paternal grandparents were not interested in learning why Mi.W. feared father. Mi.W. was released from the hospital on November 8 with a psychiatric prescription and referral for outpatient treatment.

During the November 13, 2018 preventive child family team meeting, a picture of Mi.W. with a black eye allegedly inflicted by father was disclosed. At a follow-up interview, father admitted past domestic violence with mother, but explained he always apologized afterwards. Mi.W. told mother that father caused the black eye, which occurred a few months before. Father had previously punched mother in the face. When asked about their failure to follow-up on Mi.W.'s latest section 5150 hold, mother did not reply and father blamed his parents for not following up. Father admitted to drinking heavily in recent days but then retracted his statement. When asked what a drug test would show, father admitted it would show alcohol and opiates, but then refused to test. The social worker observed that father's physical appearance was consistent with use of methamphetamine or something stronger. When the social worker mentioned this to

4

mother while father was in the restroom, mother confided that father was using methamphetamine.

On November 21, 2018, a social worker visited the paternal grandparents' home. The grandparents reported they were caring for the minors 100 percent of the time, but their abilities were hampered by the parents' lack of communication and follow-up with the minor's various needs. The grandparents turned away professionals for an assessment earlier in the week because no one had communicated the visit to them, and they had other plans. The grandparents were unaware of father's drug use, but were concerned about his untreated mental health issues. They reported that father did not listen to them or follow their advice.

The juvenile court granted the request for emergency detention of the minors after finding that their physical environment posed an imminent threat to their health or safety and there were not reasonable means by which the minors could be protected without temporary removal from the physical custody of the parents or guardians. The minors were subsequently detained over father's objection on December 12, 2018. Following an altercation in the visitation parking lot between father and mother's boyfriend, each parent was ordered to visit separately.

The January 8, 2019 combined jurisdiction/disposition report summarized the originating circumstances leading to formal Department intervention, as previously recounted here. Notably, father agreed with the harm statement vis-à-vis mother, indicating he was aware that mother and her boyfriend had a history of domestic violence, including the boyfriend pulling a knife on her and slapping her in the face. The violence had occurred in front of father and the minors, yet father failed to explain why he continued taking the minors to their mother on weekends. Father disagreed he was a danger because of mental health or substance abuse issues and refused to answer questions concerning his mental health because he did not want to incriminate himself. Father refused to test to verify he was drug free. He admitted Mi.W. reported physical

abuse but denied he had hurt him. Father indicated he was willing to take parenting and domestic violence classes, but then refused to accept the paper referrals for services and left without providing a family background.

Mother blamed father and paternal grandparents for any lack of medical or dental care related to the minors. She admitted using methamphetamine for the first time two weeks before being interviewed for the report. She had positive tests for methamphetamine on December 10 and 13. Mi.W. reported he had seen mother's boyfriend hit her on the face, but otherwise refused to be interviewed. Mi.W. continued to make statements threatening self-harm at his placement. A.W. denied witnessing any domestic violence or physical abuse, but she had disclosed to her caregiver that she witnessed a fight between father and mother's boyfriend where both were bleeding and mother was hit by accident. A.W. had not been to school in a long time and did not know why. She said she wanted to go back to living with her grandparents during the week and her mother on weekends.

Another of mother's children, M.G., reported that her mother was depressed because of discord caused by father, who wanted to be with mother and tried to fight with mother's boyfriend. M.G. said father thought he was still in a relationship with mother, but that was not correct.

The paternal grandparents were upset the minors were removed from their home and felt they were well cared for. They complained everyone was lying. When asked about Mi.W.'s medicine, grandmother said Child Protective Services (CPS) had asked the parents to fill the prescription to show responsibility. Contrary to the grandparent's previous report that their son stayed with them when the children were there, grandmother reported that father did not live in their home but only visited when the children were there. The grandparents wanted the minors returned to their home.

The February 19, 2019 addendum indicated father had missed visits with the minors and had lied about beginning drug testing. His last drug test was from 2012.

6

The March 5, 2019 addendum said paternal grandparents were in the process of obtaining approval to provide a home for the minors.  The grandparents had cared for the children during the week for the past three years and were familiar with their needs.  The grandparents stated the minors were removed because of domestic violence between mother and her boyfriend and repeated their previous assertion that everyone had been lying to CPS.

The March 26, 2019 addendum relayed that the social worker approved of placing the minors with the paternal grandparents once the resource family approval process was finished, which required the completion of two more parenting classes.  Father had visited the minors, but was "no call no show" on two occasions.  The social worker hoped that placement of the minors with the paternal grandparents would make it easier for father to visit the minors.  At the March 26, 2019 hearing, Mi.W.'s attorney expressed concern that the paternal grandparents failed to recognize when father was under the influence and were not interested in learning why Mi.W. had told the school he was afraid of father.

The April 23, 2019 addendum reported that the paternal grandparents were defensive concerning father's alcohol and/or drug use, but attested that they would not condone his using any substances while visiting their home and would do what was necessary to keep the minors safe.  Paternal grandparents denied being aware that either minor was ever afraid of father and stated they had never seen any signs of physical abuse.  Mi.W. had reported being bullied at school, but paternal grandparents' attempts to contact the school were unsuccessful because grandparents did not have legal authority over the minors.  The resource family approval social worker recommended the minors for placement with paternal grandparents.

The combined jurisdiction/disposition hearing took place on April 23, 2019, at which the parties submitted the matter on the social study reports.  Father objected that the allegations concerning his substance abuse and physical abuse were unsupported by

7

the evidence. He further objected to out of home placement and argued that domestic violence services were not required because the incidents occurred over 10 years before, and he had already had services related to them.

The juvenile court sustained the allegations, finding it had jurisdiction over the minors. The juvenile court reviewed and considered the written record and found by clear and convincing evidence that the minors were dependents. It determined that placement with the paternal grandparents would be appropriate once their approval process was complete and once services were in place to help the grandparents recognize issues related to father's substance abuse. Consistent with Mi.W.'s attorney's request, the juvenile court ordered that father's visits would be supervised by someone other than the paternal grandparents. The recommended findings and orders were adopted by the juvenile court and incorporated in the order. Father was ordered to participate in domestic violence and substance abuse programs.

STANDARD OF REVIEW

In reviewing a challenge to the sufficiency of the evidence supporting jurisdictional findings and disposition, we determine if substantial evidence supports them. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We draw all reasonable inferences from the evidence to support the findings and orders; we review the record in the light most favorable to the juvenile court's determinations; and issues of fact and credibility remain the province of the juvenile court. (*Ibid*.) We do not reweigh the evidence but merely determine if there are sufficient facts to support the juvenile court's findings. (*Ibid*.)

DISCUSSION

I

Father contends there is insufficient evidence to support jurisdiction over the minors. He claims there is not enough evidence supporting the allegations concerning mother, but even if there were, we should separately consider whether there is sufficient evidence supporting the allegations pertaining to him. Although the Department asserts

8

forfeiture,[2] we address the merits and conclude there is sufficient evidence to support jurisdiction.

Section 300, subdivision (b)(1) provides in relevant part that a child may fall within the jurisdiction of the dependency court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."  Section 300, subdivision (c) provides for jurisdiction where "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

The evidence indicates the minors were exposed to domestic violence.  Father admitted to domestic violence with mother, he engaged in physical fights with mother's boyfriend in front of the minors, and he was aware of domestic violence between mother and her boyfriend yet continued to bring the minors to stay with mother on weekends.

---

[2]  A parent in a contested dependency proceeding "is not required to object to the agency's failure to carry its burden of proof."  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464.)  Rather, a " ' "contention that a judgment is not supported by substantial evidence . . . is an obvious exception to the [forfeiture] rule." ' " (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560; see *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [parent's challenge to removal order "on the ground of insufficient evidence . . . is not forfeited even if not raised in the juvenile court"].)

9

Father made a comment that led Mi.W.'s school to lock down and to forbid him from bringing the minors to campus.

In addition, Mi.W. had escalating mental health problems resulting in two section 5150 holds for threats and acts of self-harm. But none of his caregivers obtained his psychotropic medication or followed up to provide him with mental health counseling and other services. A.W. was repeatedly absent from school and needed a new nebulizer. The minors were not receiving regular dental or medical care.

Moreover, both mother and father had untreated mental health and substance abuse problems affecting their ability to provide appropriate care for the minors. Mother suffered from untreated depression, bipolar disorder, and anxiety. She also used methamphetamine. Father had an untreated bipolar disorder, he admitted to use of opiates and to excessive alcohol consumption, and he repeatedly refused to test. The social worker observed that father's appearance was consistent with methamphetamine use, and mother disclosed that father was using methamphetamine.

Sufficient evidence supports the juvenile court's exercise of jurisdiction.

II

Father next contends there is insufficient evidence of current risk to support the minors' removal from the paternal grandparents. He claims the order must be reversed because reasonable efforts were not made to avoid removal. We disagree.

First, the record does not establish that paternal grandparents had been designated as the minors' legal guardians or custodians at the time these proceedings were commenced. Instead, it appears the minors were staying with father in the grandparents' home during the week and with mother on the weekends. As such, the minors were not removed from the paternal grandparents, they were removed from the custody of father and mother.

A juvenile court may remove a child from the parent with whom he or she resides if the court finds by clear and convincing evidence that "[t]here is or would be a

10

substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

Here, the record shows reasonable efforts by the Department. It instructed mother to attend parenting, domestic violence and counseling programs and to drug test. It also referred the minors for counseling and directed mother to reestablish Alta California Regional Center services for both herself and the minors, as well as to refill Mi.W.'s psychiatric medication and establish outpatient psychiatric services. Mother agreed she would coordinate with paternal grandparents regarding school and regional center services. Both parents were directed to coordinate with paternal grandparents to assure the minors' medical, dental, mental health, and school needs were taken care of. This included Mi.W.'s mental health and medication needs following his second release from 5150 hospitalization. In addition, the Department directed father to drug test. However, both mother and father repeatedly failed to comply with Department instructions intended to keep the minors' safe and prevent the need for removal. Father refused Department services.

Even if the minors had been in paternal grandparents custody prior to removal, the same facts supporting the removal of the minors from father would support removal from grandparents. Paternal grandparents claimed not to know about father's substance abuse even though father admitted using opiates and consuming an entire bottle of alcohol in one evening while he was staying with them. Paternal grandparents were also dismissive of repeated reports that father physically abused Mi.W. and that Mi.W. feared father. But paternal grandparents were concerned about father's untreated mental health problems and complained that father would not listen to them. Further, while staying with grandparents, Mi.W. was subject to two section 5150 holds within a 30-day period, and grandparents failed to obtain Mi.W.'s required psychiatric medicine or get him into

therapy.  Moreover, grandparents permitted father to take the minors to their mother, who suffered from known substance abuse, mental health, and domestic violence issues. They did not obtain a nebulizer for A.W. or ensure that she attended school.  Sufficient evidence supports the juvenile court's determination that reasonable efforts were made to prevent removal and that removal was required.  (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)

### III

Father further argues that the domestic violence services ordered in his case plan are not supported by substantial evidence.

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]  In reviewing an order for abuse of discretion, we ' "must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.  [Citation.]  The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child." ' [Citation.]  'The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent "a manifest showing of abuse." [Citation.]' [Citation.]" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187 [reviewing court order requiring father to participate in drug services and testing despite father's denial of drug abuse problem].)

Requiring father to participate in domestic violence services was reasonably related to the family's reunification needs.  Both mother and father conceded their relationship had a history of domestic violence.  Moreover, father had engaged in physical fights with mother's boyfriend in front of the minors, and father was aware of domestic violence between mother and her boyfriend yet brought the minors to stay with

12

mother on weekends.  Under the circumstances, the juvenile court did not abuse its discretion in requiring father to participate in and complete a domestic violence program.

<h1 style="text-align:center">IV</h1>

Father further claims the juvenile court abused its discretion in ordering that his visits be supervised by someone other than the paternal grandparents.

Section 362.1 provides in part:  "(a) In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide as follows:  [¶]  (1)(A) Subject to subparagraph (B), for visitation between the parent or guardian and the child.  Visitation shall be as frequent as possible, consistent with the well-being of the child.  [¶]  (B) No visitation order shall jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(A)(B); see *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 838-839 [visitation may be limited if the juvenile court finds it is not in the child's best interest].)

In visitation matters, the juvenile court is accorded broad discretion.  We review visitation orders for abuse of that discretion.  (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284; *In re Megan B.* (1991) 235 Cal.App.3d 942, 953.)  " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' "  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

There is evidence that paternal grandparents were not adequate supervisors for father's visits.  They claimed no knowledge of father's substance abuse and did not pursue Mi.W.'s allegations of physical abuse by father.  The minors were appropriately removed from father's custody while the family was staying in the paternal grandparents' home.  Thus, the juvenile court was well within its discretion in determining that

someone other than grandparents would be required to supervise visits with father until paternal grandparents had completed suitable services aimed at bolstering their ability to safely supervise father's visits with the minors.

DISPOSITION

The juvenile court orders are affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
BLEASE, Acting P. J.

_____/S/_____
HULL, J.