Filed 2/24/22  In re Z.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re Z.S. et al., Persons Coming Under the Juvenile Court Law. | C094018 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, Plaintiff and Respondent, v. DENNIS S., Defendant and Appellant. | (Super. Ct. Nos. JD239588, JD239589) |

Father, Dennis S., appeals from the juvenile court's order terminating dependency jurisdiction, awarding mother sole legal and physical custody of the minors, issuing a no-contact order, and denying visitation with the minors.  (Welf. & Inst. Code, §§ 364, 395; further unspecified statutory references are to this code.)  He contends there is not sufficient evidence to support the no-contact order denying him visitation.  We agree and reverse the order.

1

FACTS AND HISTORY OF THE PROCEEDINGS

In early 2019, the Department of Child, Family and Adult Services (Department) filed a section 300 petition alleging the children, Z.S. and P.N., were at substantial risk of harm due to mother's untreated mental health condition and substance abuse problems. The children were placed into protective custody and removed from mother's home. Almost six-year-old P.N. was placed with mother's stepaunt and two-year-old Z.S. was placed with his father, Dennis S.

In the February 2019 jurisdiction and disposition report, the social worker noted Z.S. was fully acclimated and bonded with father, and that father had provided care and lived with Z.S. since his birth. Father had also provided Z.S. stable housing since the initial hearing in these proceedings. Initially P.N.'s father was unknown. Later in the proceedings, the juvenile court found Dennis S. to be P.N.'s presumed father. P.N. and Dennis S. also identified as father and son. The juvenile court found the allegations of the section 300 petition true.

In April 2019, the Department filed a section 342 petition alleging father had left Z.S. with an inappropriate caregiver, failed to provide appropriate medical care, and failed to comply with court ordered drug testing. Z.S. was removed from father. Ultimately, the children were placed with mother's stepfather.

Mother and father were provided reunification services. Father was ordered to submit to alcohol and drug testing and parenting classes. Father was granted visitation with Z.S. After being declared P.N.'s presumed father, he was also granted visitation with P.N. Both father and the Department indicated there had been communication problems in getting his visits scheduled, arranging for drug testing that did not conflict with his work schedule, and starting his parenting classes.

As of November 2019, approximately six months after father was granted visitation with both children and offered reunification services, he had completed nine

out of 10 counseling sessions and completed the parenting classes, although he did not seem to have benefitted from the classes. He had not been drug testing as required and had failed to complete his alcohol and other drug (AOD) assessment. Father had been inconsistent in his visitation. When he did visit, it was one time per week rather than the two he was offered, and he would end visits early. When asked about his lack of visitation, he told the social worker the visits were too upsetting for him and he would rather not see the children than feel badly after the visits. He had not visited the children at all since August 2019. During this period, the children were generally reported to be doing well; they were both active and developmentally on target. It was noted P.N. had difficulty expressing his feelings and got angry easily. There was no other information on visits with father or the children's reactions to father's inconsistent visitation or lack of visitation for three months.

At the November 2019 hearing, minor's counsel stated P.N. missed mother and father. Mother also stated that the children told her at every visit that they wanted to see father. Father also told the juvenile court he had not been going to visits because it was so difficult for him emotionally, particularly seeing his children look at him like they wanted to go home with him. He also stated he had trouble with the visitation schedule because he had a number of barriers, including housing issues and the need to focus on successfully completing his probation, which he had been able to do.

In May 2020, the Department recommended father's reunification services be terminated. Father continued to be inconsistent in his visits and had not visited the children since late March 2020. He told his counselor he had stopped visits with the children because after visits he got depressed and could not go to work, and he needed to stay productive and work so he could pay his bills and rent and maintain his employment. The Department reported father did not understand the detriment to the children of his lack of contact or the negative impact of inconsistent visitation and contact with the children. Father continued to refuse to submit to random drug testing during this period

and did not feel he needed any additional counseling. During this period, the children were generally reported to be doing well; they were both active children meeting all developmental milestones. P.N. was making progress in managing his anger and communicating more effectively. There was no additional information about visits with father or the children's reactions to father's inconsistent visitation or the lack of visitation for three months.

Meanwhile, mother had made significant progress in her reunification services, completed her counseling, parenting education, and anger management courses. She continued to participate in therapy sessions with P.N. and continued her substance abuse treatment. She had progressed to unsupervised overnight visits with the children.

At the permanency planning hearing in November 2020, the parties agreed to send the children home in mother's custody. The juvenile court found father had failed to have contact with the children and failed to make substantive progress in reunification services. The juvenile court terminated father's reunification services.

Five months later, at the in-home review, mother had continued to make good progress and the children were doing well in her home. The children were developmentally on target and there were no concerns for either child's emotional or mental state. Father had not visited the children for six months, since October 2020. He had requested and been given a referral for visits in January 2021, but had not contacted the Department to start those visits. There was no information about the children's reactions to father's lack of visitation for the last six months.

The Department recommended father be granted supervised visitation on a schedule to be determined by the parents. Mother requested the court order no visitation for father based on his failure to be involved in the case and failure to contact the children in over six months. Father's counsel objected to a "no-contact" order and indicated a minimum of one visit per year would be appropriate. She noted father had made clear he did not want to engage in the process and was waiting for the case to close before

4

reengaging with the children, but had not been advised that choice would foreclose future contact with the children. Minor's counsel submitted on mother's counsel's request, but did not make any further argument. The Department did not object to either a no-contact order or to a visitation order of once per year. Mother's counsel then indicated the reason for the request for "no visits is that the proposed visitation order if he comes forward minimum one time per year these children haven't seen their father in quite some time. They are young. And for him to, you know, pop up suddenly in a year from now or two years from now and decide that he wants to see them, then client is left with the fallout of that. Having to deal with them visiting someone they may not even remember, it's just, I think, it would be very confusing. So I think it should be on him given his lack of involvement and his lack of contact to go to family law and file something if he's totally serious about wanting to see the kids."

The juvenile court indicated it understood that certainly for four-year-old Z.S., having "somebody popping in and out of his life is a little bit more emotionally detrimental," but for P.N. it was likely less so. The court noted it was trying to balance the emotional well-being of the children against father's limitations. "If these [children] don't have a father who wants to be active and engaged, that, of course, is detrimental to the [children]. But that's obviously nothing any of us can fix . . . So I'm not sure what I need to protect the children from in terms of the choices [father] has made to date. And I guess I'm concerned that in some part a no-contact order feels like it's punishing [father] for not being involved as opposed to real risk for the children."

Mother addressed the juvenile court and indicated her gratitude for the process and the services. She did not mention father, his lack of contact with the children, or the children's reaction to father's inconsistent visitation.

The juvenile court terminated dependency jurisdiction and placed the children in the sole legal and physical custody of mother. The juvenile court also granted mother's "request for [a] no-contact order . . . pending [father] coming forward and filing in the

5

family law court.  In part, I'm giving some credence to the progress [mother] has made and the relationship that she has with her [children] and the information that she is putting forward that the emotional detriment to the [children] by having the father pop in and out of their life is something that leaves wreckage behind as was argued that she has to address when [father] again leaves.  [¶]  So I think that there is something to be said for [father] being able to demonstrate that he's ready to be a consistent participant in the [children's] lives or that the [children] get older to where they are both able to more readily understand the limits of [father] in terms of his availability to them and what it means to have a father that's there and then not there.  [¶]  And at this point in time, I don't think certainly [Z.S.] is there.  And I think it would be very confusing if there was a different order for the [children] at this point in time."

## DISCUSSION

Father contends there is not substantial evidence supporting the juvenile court's no-contact order denying him visitation with the children.  He contends there was no evidence to support a finding under the "heightened level" of detriment or risk to the children's physical safety and emotional well-being.  The Department contends the orders were correctly made under section 362.4, as there is substantial evidence visits would be detrimental.  We disagree that the juvenile court was required to find detriment or risk to the children before denying visitation; however, we agree the juvenile court abused its discretion in denying visitation, as there is not substantial evidence supporting the conclusion that the denial was in the children's best interests.

*Standard Governing Discretion*

Initially, father claims that to deny him visitation, the juvenile court was required to find a heightened standard of detriment or risk to the children's physical safety and emotional well-being.  We disagree.  This order was made under section 362.4 after the children were placed in mother's custody and dependency jurisdiction was terminated.

6

Thus, father was entitled to visitation only if it was in the children's best interests. (*In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)

The standard of detriment father would have us apply derives from statutes, and cases interpreting those statutes, governing reunification (§ 361.2; *In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1094; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1218-1220; *In re Mark L.* (2001) 94 Cal.App.4th 573, 580; *In re Luke L.* (1996) 44 Cal.App.4th 670, 679; *In re Dylan T.* (1998) 65 Cal.App.4th 765, 775) and specified review hearings (§§ 366.21, subd. (h); 366.22, subd. (a)(3); *In re Manolito L.* (2001) 90 Cal.App.4th 753, 760 [petition for modification of visitation filed after parental rights terminated]; *In re David D.* (1994) 28 Cal.App.4th 941, 954). Those statutes have explicit statutory language *requiring* visitation either: consistent with the well-being of the child, but in no event jeopardizing the child's safety (§ 362.1, subd. (a)(1)(A)-(B)); or unless the juvenile court "finds that visitation would be detrimental to the child." (§§ 366.21, subd. (h); 366.22, subd. (a)(3).)

The Legislature clearly knows how to require visitation in the absence of a finding of detriment or risk of harm. There is no such explicit statutory language in section 362.4. Instead, section 362.4 *permits* the juvenile court to make " 'exit orders' " regarding custody and visitation when it terminates dependency jurisdiction, which will remain in effect unless terminated or modified by a family law court. (§ 362.4, subd. (a); *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) Nothing in section 362.4, or relevant case law regarding section 362.4, requires a finding of detriment to deny visitation or contact in an exit order and we will not engraft such a requirement into the statute. Rather, when making a juvenile court custody and visitation order pursuant to section 362.4, the juvenile court must look to the best interests of the child under all the circumstances. (*In re John W., supra,* 41 Cal.App.4th at pp. 965, 973; accord, *In re T.S.* (2020) 52 Cal.App.5th 503, 513; *In re Jennifer R., supra,* 14 Cal.App.4th at p. 712.)

7

*Abuse of Discretion*

We review a juvenile court's decision to terminate dependency and issue exit orders for abuse of discretion. (See *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) We will not disturb an exit order " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Bridget A.*, at p. 300.) The test for abuse of discretion is whether the juvenile court exceeded the bounds of reason. If two or more inferences can reasonably be deduced from the facts, we may not substitute our decision for that of the juvenile court. (*Stephanie M.*, at pp. 318-319.) Where there is not substantial evidence supporting the finding that denial of visitation is in the children's best interests, an order denying visitation is an abuse of discretion. (See *In re William B.* (2008) 163 Cal.App.4th 1220, 1229; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

" ' "Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citation.]' [Citation.] 'Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence. [Citation.]' " (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 419-420.)

Evidence is "testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) To establish evidence of a fact is to offer "proof" of it. (Evid. Code, § 190.) Testimony in a hearing connotes statements made under oath. (*People v. Belton* (1979) 23 Cal.3d 516, 524.) Unsworn statements are not evidence. (*County of Alameda v. Moore* (1995) 33 Cal.App.4th 1422, 1426.) And certainly, "[i]t is axiomatic that the unsworn statements of counsel are not evidence. [Citations.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.)

8

The only evidence before the court at this hearing was the reports of the Department. There was no testimony. Those reports indicate father's visitation throughout these proceedings was inconsistent or nonexistent. Yet, there is no evidence in the record as to the effect of that lack of consistent visitation on the children. Although the Department opined in its reports that father's inconsistent visitation had a negative impact on the children, there was no evidence supporting that opinion. The contemporaneous reports from the Department provided little information on the visits that did occur and no information at all on the impact of father's inconsistent visitation. Rather, the children were reported to be generally doing well throughout the dependency proceedings. The only evidence in the record regarding the children and their relationship with father was that Z.S. was bonded to him and P.N. missed him (and mother). The Department initially recommended father have supervised visitation on a schedule to be determined by the parents. As the hearing continued, it expressed no objection to either no visitation or visitation once per year. These recommendations belie the claim that father's inconsistent visitation left wreckage in the children's lives.

Although the court indicated it was relying on mother's claim that having father "pop in and out" of the children's lives left wreckage behind that she had to deal with when he left, mother did not make such a claim on the record. Mother herself said nothing on the record about father, visitation, or the effect on the children of father's lack of consistent visitation. Mother's counsel stated mother was required to deal with whatever might be the fallout of father's inconsistent visits in the future, and that visiting with father, someone they might not remember, would be very confusing to the children. Father's visitation was inconsistent throughout these proceedings, yet there was no evidence in the record that there had ever been any fallout from his inconsistent visitation for mother to deal with, let alone "wreckage," nor was there evidence the children did not remember father.

The juvenile court engaged in colloquies with mother, counsel, and the social worker at the hearing. The result of those conversations was that the court gathered some information relevant to the issue of father's visitation, but that information is not "evidence." It also appears from the record that there were additional discussions off the record which may have more fully developed and supported the basis for the juvenile court's findings. But those discussions are also not evidence contained in the record and we cannot rely on them. (See *In re Julie M*. (1999) 69 Cal.App.4th 41, 51-52.) On this record, we cannot find that there is substantial evidence supporting the juvenile court's no-contact order denying visitation. Accordingly, the juvenile court abused its discretion in entering the order and we must reverse.

## DISPOSITION

The section 362.4 exit order is reversed. The matter is remanded for the juvenile court to conduct a new hearing as to father's visitation exit orders consistent with this opinion, taking into consideration the family's current circumstances and any developments that may have occurred during the pendency of this appeal.

 

 

HULL, J.

We concur:

BLEASE, Acting P.J.

HOCH, J.

10