Filed 7/26/22 In re N.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078217 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ2100079) |
| v. | OPINION |
| S.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Judge. Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham, County Counsel, and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

S.L. (Father) and J.C. (Mother) are the parents of 12-year-old N.C.[1] Following family maintenance services, the juvenile court terminated dependency jurisdiction over N.C. and entered exit custody orders granting Mother sole physical custody of N.C., joint legal custody to Mother and Father, and reasonable visitation to Father. Father appeals, arguing the juvenile court abused its discretion when it granted sole physical custody to Mother, thereby creating a removal custody order from Father. We disagree and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and her daughters, N.C. and T.C., lived together. Father provided for, and visited his daughter, N.C., on weekends. The family came to the attention of the Riverside County Department of Social Services (DPSS) on December 28, 2020, after a referral was received with allegations of general neglect and sexual abuse. Mother had called the crisis support line and requested help for her children after she discovered her then 16-year-old daughter T.C. had sexually assaulted her then 11-year-old daughter N.C. Specifically, N.C. reported that T.C. gave her a substance via a vape pen and then forced herself onto her, touched her vagina, and performed oral sex on her. T.C. had also asked

---

[1] Mother also has an 18-year-old daughter, T.C., who is not a subject of this appeal.

2

N.C. to get into bed with her and pretend she was a friend. N.C. did not know how to stop T.C. and was scared. Mother noted that T.C. had been a victim of sexual abuse as a child and that T.C. had a history of anxiety, depression, and taking psychotic medication. Mother also stated that T.C. had also been involuntarily committed four or five times in the past.

DPSS's investigation revealed that the girls shared a bedroom but had separate beds. After the incident, Mother separated the girls and removed the bedroom door. T.C. was hospitalized at a mental health hospital due to suicidal ideations and disclosed wanting N.C. to feel the same pain she felt when she was sexually abused as a child. Mother planned to install cameras in the household and make new sleeping arrangements for the girls. A safety plan was eventually developed whereby T.C. would be supervised by Mother's boyfriend's relatives. Later, because N.C. no longer felt comfortable residing in the same home with T.C., Mother, Father, and Mother's boyfriend agreed that T.C. would move out of the home and live with a relative of Mother's boyfriend.

N.C. saw her father every Saturday at his residence and actively participated in her life. Mother and Father did not have a family law order; instead they had a mutual agreement that N.C. would visit Father every Saturday. Father was consistent, adequately provided provisions for N.C., and paid child support. Mother reported that she had asked Father to help more with supervising N.C., but he stated he could only help on the weekends. Father confirmed that because he worked a lot that he was unable to

help more with supervising N.C. other than on the weekends, even though he wanted more visits with N.C.

Mother disclosed that N.C. had been "'bothered'" by a situation with Father. Specifically, Father had recently married without informing N.C. or involving N.C., causing N.C. to be very emotional about the situation. Father reported that N.C. had not wanted to visit with him the past two weekends. He also noted that N.C. came with a bad attitude to visits and that she did not like it when he took her out. Father believed that N.C. did not enjoy spending time with him. He shared that he had requested that N.C. reside with him, but N.C. refused. Father denied the need for custody orders.

On February 11, 2021, a Welfare and Institutions Code[2] section 300 petition was filed on behalf of T.C. and N.C. pursuant to section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (g) (T.C.'s father's failure to provide support). N.C. was not detained and remained in the parents' care.

On February 26, 2021, the juvenile court found a prima facie showing had been made that N.C. came within section 300, subdivisions (b) and (d) and maintained N.C. in the parents' care.

The social worker interviewed N.C. on March 4, 2021. N.C. reported that she wanted to remain with Mother and an adult sister in the home. She did not want to have contact with T.C. and did not want T.C. to return to the home. N.C. rolled her eyes when

---

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

asked about Father. She stated that she did not like to visit her father because there was "drama" with his wife's two daughters who lived in Father's home. N.C. also asserted that there was also "drama" with Father's wife's niece, that she did not like them, and that Father did not invite her when he got married. N.C. reported that she had last visited Father on "New Year's" (January 1, 2021). Mother intervened and stated that Father had visited the home and dropped off items since then, but N.C. chose not to visit with him. Mother also indicated that N.C. chooses when she wants to visit with Father as she does not get along with his wife's family and noted that N.C. talks to Father on the phone three to four times a week.

On May 11, 2021, T.C. was detained from Mother because there was no caretaker available to care for her and her ongoing mental health issues and behaviors were too much for the family friend to manage. T.C. was therefore placed into a group home.

On June 4, 2021, the juvenile court found true the allegations in the second amended petition and declared the children dependents of the court.[3] The court maintained N.C. in the parents' custody and provided them with family maintenance services.

By the six-month review hearing, DPSS recommended that the parents continue to receive family maintenance services. DPSS also recommended that the dependency be terminated as to N.C. upon Mother's completion of her case plan and that N.C. continue

---

[3] Father was not present at the jurisdictional/dispositional hearing. As to Father, the court found true that he knew or reasonably should have known that N.C. was sexually abused by T.C. and failed to intervene to protect her.

5

to reside with Mother. In October 2021, Father indicated that he did not have time to participate in his case plan and/or to be in contact with DPSS. He also noted that N.C. chose when she wanted to visit with him as she did not get along with his wife's family. Father was referred to therapy, but never enrolled in the program because he did "'not hav[e] time' to deal with this court case." Although the parents had a verbal agreement that Father would visit N.C. every Saturday, Mother and N.C. reported that they had no contact with Father for weeks.

On December 9, 2021, the juvenile court held a contested family maintenance hearing in N.C.'s case. Father was not present in court. Father's counsel requested that the dependency be terminated with joint legal and physical custody to the parents and that Mother be provided with primary physical custody. Father's counsel also requested that visitation or shared custody time be arranged between the parents. DPSS's counsel requested joint legal custody with sole physical custody to Mother with reasonable visitation to Father, noting that Father from the inception of the case had stated he was not going to complete services and was not visiting N.C. Father's counsel disagreed, arguing that the court had never removed N.C. from Father's care under section 361, subdivision (c). The juvenile court acknowledged that "there were no removal findings made for the father," but explained that Father was not participating in services or regularly visiting N.C. The court granted Father's request to terminate the dependency with Mother having sole physical custody and the parents having joint legal custody of N.C. with reasonable visitation for Father. Primary custodial time was to be with Mother,

6

and Father's custodial time was to be reasonable and arranged between the parents. The court also ordered the dependency to be terminated upon the filing of the juvenile custody orders. The court found that there were no removal orders. Father timely appealed.

III.

DISCUSSION

Father contends the juvenile court abused its discretion in entering exit custody orders granting Mother sole physical custody, thereby creating a removal of custody from him. We disagree.

The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265.) The decision to terminate dependency jurisdiction and to issue custody and visitation orders pursuant to section 362.4 is reviewed for abuse of discretion, and we will not disturb that decision unless ""the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).) ""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason."" (*Id.* at pp. 318-319.) As a reviewing court, we do not substitute our judgment for that of the juvenile court or weigh the credibility of the witnesses or resolve conflicts in the evidence. (*Id.* at p. 319; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

When a juvenile court terminates its jurisdiction over a dependent child, it may issue family law orders governing custody or visitation, commonly referred to as "exit

7

orders." (§ 362.4, subd. (a); see *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.) These exit orders are transferred to the family court to become part of the relevant family law case file or, if no proceedings are pending in family court, "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subd. (c); see *In re John W.* (1996) 41 Cal.App.4th 961, 970, fn. 13.)

A juvenile court terminating dependency jurisdiction and making custody or visitation orders "does so as a court with 'a special responsibility to the child as *parens patriae* and [it] must look to the totality of a child's circumstances when making decisions regarding the child.' [Citation.]" (*In re J.T.* (2014) 228 Cal.App.4th 953, 963; accord, *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [court "must look to the totality of a child's circumstances when making decisions regarding the child."].) In making custody orders, the court must "make an informed decision concerning the best interests of the child" (*In re John W.*, *supra*, 41 Cal.App.4th at p. 972), and its primary concern must be a determination of "what would best serve and protect the child's interest." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652.)

The order must be filed in the superior court and may be modified in a family law proceeding if the parent shows a significant change of circumstances and establishes that modification of the order is in the best interest of the child. (§§ 302, subd. (d), 362.4, subds. (b), (c); Fam. Code, § 3021; *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165.)

There is no presumption in favor of joint custody when a juvenile court is making a family law exit order. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; accord, *In re Chantal S.*, *supra*, 13 Cal.4th at p. 206.) Family law presumptions favoring joint custody do not apply in the dependency context. (*In re Chantal*, *supra*, at p. 206 ["application of a family-law-based joint custody presumption would be inconsistent with the purpose of juvenile court law"].) Rather, as previously noted, a "juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case" (*In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 265, fn. 4.), and these orders will not be disturbed unless an abuse of discretion is clearly established (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318).

Based on a review of the record, we cannot say the juvenile court acted arbitrarily in awarding Mother sole physical custody with reasonable visitations to Father. "In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) Here, the court reasonably could infer that a joint physical custody arrangement would disrupt the stable environment N.C. enjoyed with Mother. In fact, as the record reflects, N.C. did not want to see or visit Father. And Father did not want to participate in the case, including services to mend his relationship with N.C. There was no evidence in the record to suggest that Father was capable of managing N.C.'s emotional well-being, health, education, and welfare or that granting joint physical custody was in N.C.'s best interest. At the time the juvenile court terminated jurisdiction, Father had not

participated in any services and failed to regularly visit N.C. It also appeared that Father had no interest in the matter as evidenced by his statements and failure to attend important court hearings. Under these circumstances, the court reasonably concluded joint physical custody was not in N.C.'s best interest.

Father presents no argument to the contrary and fails to explain how shared custody would actually be in N.C.'s best interest. Instead, Father relies on the facts that he was not the cause leading to the dependency action, he had continued to support N.C., he was sensitive to N.C.'s well-being, and there was a mutual agreement between him and Mother. However, the court's order was essentially tantamount to the parents' de facto arrangement that had already been in place. In any event, Father failed to participate in services to mend his relationship with N.C., which would have been in N.C.'s best interests. Although he had been referred to therapy, he never enrolled in the program. Instead, Father stated that he did not want to participate in the case or contact DPSS because he was too busy with work.

Moreover, contrary to Father's assertion, Mother's sole physical custody of N.C. does not mean that N.C. was removed from Father's care pursuant to section 361, subdivision (c), or that the court found him unfit to retain his custodial rights. Before physically removing a child from his or her parent, the court must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means to protect the child without such removal. (§ 361, subd. (c)(3); *In re Cole C.* (2009) 174 Cal.App.4th 900, 917; *In re Kristin H.* (1996) 46

10

Cal.App.4th 1635, 1654.) The focus of the statute is on averting harm to the child. (*In re Cole C.*, *supra*, at p. 917.) Granting Mother sole physical custody is not the same as a finding of unfitness and a removal of custody from Father under section 361, subdivision (c). The juvenile court specifically found that there were no removal orders in regard to Father. The court did not abuse its discretion in awarding Mother sole physical custody and joint legal custody to Mother and Father.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.